CYNTHIA JACKSON, *et al.,* v. GEORGE F. LATTA.

1. SHERIFF'S DEED; *Where there is no Judgment, the Deed is Void.* A sheriff's deed will be held to be void, if it be shown that such deed is not founded upon or sustained by any judgment entered of record.

2. JUDGMENT; *May be Entered, Nunc pro Tunc.* Where in action a trial was duly had, verdict returned and recorded, judgment actually rendered, but by some oversight or omission such judgment was not entered of record, it would seem that the trial court, at any time afterward, upon notice to all the parties interested, may direct that such judgment be entered *nunc pro tunc.*

*Error from Linn District Court.*

EJECTMENT, brought by *Cynthia Jackson,* and her three sons, *James, John W.,* and *Thomas,* the widow and children of *Thomas Jackson* deceased. The petition alleged that said deceased died on the 29th of December 1861, seized in fee of the N.½ of the N.E.¼, and lots No. 5 and 6, of sec. 10, township 21, of range 25 east, in Linn county, and containing, together, 149.51 acres; that the plaintiffs are the only

heirs-at-law of said deceased; that plaintiffs *James, John W.,* and *Thomas,* are minors, for whom plaintiff *Cynthia* has been duly appointed guardian, etc.; that as such heirs plaintiffs are the lawful owners of said land, having a legal estate therein, and that they are entitled to the possession thereof, and that defendant *Latta* keeps them out of possession, etc. *Latta* appeared and answered, admitting his possession, and alleging, first, that he is the owner in fee of said lands; and second, that he claims title to said lands under a sheriff's deed, duly executed, etc., on the 13th day of June 1859, "and that more than five years have elapsed since the recording of said sheriff's deed." Reply, general denial. Second trial, at the April Term 1872 of the district court, (at which term the Judge of the Tenth Judicial District presided, for and in the absence of the Judge of the Sixth District.) The plaintiffs gave in evidence a patent for said land from the government to said Thomas Jackson deceased, dated August 15th 1862, followed by proof showing that plaintiffs were the widow and children of said deceased, and that said *Cynthia* had been appointed guardian of the other plaintiffs, by the county court of Monroe county, Missouri. And thereupon *Latta* offered in evidence the sheriff's deed under which he claimed, and being a deed for "the N.E.$\frac{1}{4}$ of section 10, township 21 south, of range 25 east, Linn county, Kansas Territory, containing 135 acres more or less," executed by the sheriff of Linn county, to Asa Hairgrove, dated June 13th 1859, and purporting to be issued upon a sale made by said sheriff, by virtue of a writ of execution issued to him upon a judgment rendered by the United States district court sitting in Linn county, at the October Term 1858, "in an action wherein Asa Hairgrove was plaintiff, and Charles Hamilton, Algernon Hamilton, Michael Hubbard, Thomas Jackson, Stephen Hightower, James Tate, Frank Powell, Joseph Powell, Levi Henderson, A. Henderson, William Yewlock, G. P. Hamilton, A. B. Brocett, Jasper Brumfield, and N. B. Matlock, were defendants." This deed was objected to on the ground that no judgment, execution,

15—15 KAS.

and sale had been shown, but the court admitted the deed. *Latta* then showed regular conveyances from said Hairgrove to himself. The plaintiffs, in rebuttal, gave in evidence to impeach said deed the record and papers in the action mentioned in the deed. The record shows a petition filed August 13th 1858, in which Hairgrove alleges that the defendants Hamilton, Jackson, and others, "on the 19th of May 1858, with force and arms, and against the will of plaintiff, did capture and take him from and near his residence, in the county of Linn and territory of Kansas, and afterward, on the afternoon of the same day, wickedly, maliciously, and without just cause or provocation, with firearms did shoot said plaintiff, thereby greatly injuring and wounding his face, and breaking the bones of plaintiff's hands," and claiming $5,000 damages; a summons and service on Matlock; affidavit for publication, as to the other defendants; affidavit and undertaking for and order of attachment, with sheriff's return on the attachment, showing a levy on the lands described in the deed, and described as the property of Thomas Jackson; a notice, published in a newspaper, requiring defendants to answer said petition on or before September 11th 1858. A "motion to quash order of attachment," "because an attachment is not proper remedy in *this form* of action," was found among the papers, and is copied in the transcript. It is signed, "Morehouse, att'y for defts." This motion does not seem to have been heard, or disposed of. The case was tried October 29th 1858, at said October Term 1858, of said District Court of the United States, Hon. JOSEPH WILLIAMS, U. S. District Judge, presiding. The journal entry of such trial, as given in the transcript is as follows:

"The case of Asa Hairgrove plaintiff, against Charles A. Hamilton, et al., defendants, was called for trial, and thereupon the defendants in the above cause was called three times, and they came not, neither by themselves nor attorneys; whereupon judgment was rendered by default against defendants Charles A. Hamilton, et al. A jury being desired to assess the damages in the above case, the following persons were impanneled and sworn to try the case according to law

and evidence, to-wit, [*giving names of jurors.*] The evidence being heard in the above case, and jury charged, the case was submitted to them for their consideration. After being absent about twenty minutes returned a verdict as follows:

"'We the jury find for the plaintiff, and assess his damages at $5,000.                         THOS. H. BUTLER, Foreman.'"

The transcript also shows that, "Afterwards, on the 9th of November 1858, said clerk of said court issued an order to sell the lands and tenements, goods and chattels, of said defendants, attached in said action, which said order is in the words and figures, to-wit:

"And now comes Asa Hairgrove, plaintiff, by his attorneys Mitchell & Ayers, and makes proof that he caused a notice containing a summary statement of the object and prayer of said petition, and notified said defendants Charles A. Hamilton, et al., that they were required to answer the said petition on the 11th day of September 1858, to be published six consecutive weeks in the Fort Scott Democrat, a newspaper published in the town of Fort Scott, Bourbon county, Kansas Territory, and of general circulation in Linn county, (there being no newspaper published in this county,) the last publication being on the 11th of August 1858; and now the said defendants having failed to appear, and answer or demur to said petition, being three times solemnly called came not but made default, and thereupon by default judgment is entered against said defendants. On motion of plaintiff's counsel it is therefore ordered that a jury be impanneled to assess the damages. Thereupon came a jury, to-wit, [*giving the names of the jury,*] who being duly impanneled and sworn the truth to speak, upon the inquiry aforesaid, do on their oaths say and assess the plaintiff's damages at the sum of $5,000. It is therefore ordered by the court that the plaintiff recover from said defendants the said sum of $5,000, and his costs herein expended, taxed at $47.20. And it is further ordered by the court that the said sheriff proceed as upon execution to advertise and sell so much of the personal and real-property heretofore attached in this action, now in his hands, as will satisfy the said plaintiff's judgment aforesaid, and all costs herein, taxed at $47.20.

"J. WILLIAMS, Judge."

The transcript also shows that said "order of sale" was afterward returned by the sheriff, showing that he had duly

advertised said attached property, and that on the 25th of December 1858, by virtue of said "order of sale" he sold said "N.E.¼ of Sec. 10, T. 21, R. 25, containing 135 acres, to Asa Hairgrove for $6.70 per acre." Then follows this entry:

(*Title.*) "On motion of said plaintiff, by Mitchell & Ayers his attorneys, and on producing the return of the sheriff of this county of Linn of a sale of real estate made by him on the 25th day of December to Asa Hairgrove, * * * on an attachment issued in this case, and dated the 18th of August 1858, and in an order of sale made by the district court of Linn county, Kansas territory, at the October Term of said court, on the 29th of October 1858, and the court, on the examination of said proceedings, being satisfied that said sale had been made in all respects in conformity to law, *It is ordered,* that the said sale and proceedings be and the same are hereby confirmed, and the said sheriff is ordered to make to said purchaser a deed for the lands and tenements so sold. Made and done this 17th day of May 1859.

"J. WILLIAMS, Judge."

The plaintiffs, *Cynthia Jackson* and others, having offered said transcript and record in evidence, and the same being received and read, thereupon moved to exclude said sheriff's deed so as aforesaid offered by defendant *Latta.* This motion was overruled, and excepted to. The plaintiffs asked the following instruction, which was refused:

"That the sheriff's deed read in evidence in this case, is void; and that Asa Hairgrove took no title to the land in dispute under and by virtue of the said deed."

The defendant asked an instruction, that the plaintiffs' action, not being brought within five years from the recording of said sheriff's deed, was barred by statute of limitations, which was refused. But the court gave the following instruction:

"The judgment recovered against Thomas Jackson, in the case of Asa Hairgrove v. Thomas Jackson, et al., and pursuant to which the sale of said lands in controversy was had, was and is a good and valid judgment, and in full force and effect in law, so far as it affects the land in controversy, sold in pursuance to said judgment."

The jury found in favor of *Latta,* defendant. New trial refused, and judgment on the verdict. The plaintiffs bring the case here on error.

*McComas & McKeighan,* and *E. M. Hulett,* for plaintiffs:

If there was a judgment in form, upon or under which the sale was made, such judgment was void for want of jurisdiction. The summons, as to all the defendants except Matlock, is returned "Not found." The affidavit for publication is in these words: "Plaintiff being duly sworn says, that service in the above case cannot be had upon the defendants, except by publication." Upon a publication under this affidavit, the defendants were called three times, and came not, whereupon "Judgment was *rendered by default.*" This was not sufficient to give the court jurisdiction to render any judgment. (*Shields v. Miller,* 9 Kas. 390.)

But there is no judgment. A jury was called and assessed the damages against the defendants, but it nowhere appears in the record that any judgment was rendered upon the verdict, or *entered* upon the default. Immediately following the verdict, the transcript reads—"Afterwards, on the 9th of November 1858, (the case having been heard on the 29th day of October 1858,) said clerk of said court issued an order to sell the lands and tenements, goods and chattels attached in said action, which said *order* is in words and figures as follows, to-wit." The "order" is then given, and is signed by the *judge,* instead of the *clerk,* and is in form of a judgment upon the verdict of the jury. Such order is not a judgment. It recites no judgment, as none was ever entered. It is only the statement of what the clerk supposed the unwritten judgment was; and being signed by the judge, or his name being affixed by the clerk, does not convert said "order of sale" into a *judgment,* even in form. No legal sale could be made under the attachment, until a judgment was rendered upon a sufficient publication; and the record shows there was no legal publication against the defendants. *Repine v. McPherson,* 2 Kas. 340.

Among the files was found a paper purporting to be a motion to discharge the attachment. It was claimed by defendant below that this paper showed an "appearance" by Jackson and the other defendants in the original action. Upon this point, we submit the following observations: This paper was never marked "filed" by the clerk. It was never called to the attention of the court, nor acted upon. There is nothing to show it was not stuck into the files long after the lands in controversy were sold under such pretended judgment. It is signed "*Morehouse*, att'y for *defts*," but whether the defendant who was served, or some of the other defendants, it does not say. There is nothing in the proceedings of the court, as shown by the journal entries, to show this man "Morehouse" ever acted or assumed to act, in the case as attorney for any defendant. On the contrary, the records show the judgment was rendered "by default," and not upon appearance. We contend that the pretended motion to quash cannot be regarded as an appearance of Thomas Jackson, and this leaves the case as to him, without service either personal or by publication, and of course without jurisdiction to render the pretended judgment under which Latta claims title.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of an action of ejectment, brought by Cynthia Jackson and others against George F. Latta. The plaintiffs claim as heirs of the original ` patentee, Thomas Jackson. The defendant claims under a sheriff's deed, executed June 13th 1859, to Asa Hairgrove, on a supposed judgment rendered in favor of said Hairgrove and against said Thomas Jackson and others. On the trial in the court below, after the plaintiffs had introduced their evidence and rested their case, the defendant introduced said sheriff's deed in evidence, showing a regular chain of title from Hairgrove to himself. The sheriff's deed was of course sufficient evidence, *prima facie*, to show that the title to the property in controversy had passed from Jackson to Hairgrove. (*Ogden*

1. Sheriff's deed. Evidence. Title.

*v. Walters*, 12 Kas. 292, and cases there cited.) The plaintiffs then introduced the record of the proceedings upon which said sheriff's deed is founded. No objection was made to the introduction of this record. No claim was made that it was not the whole of the record, and a true record of each and all of the proceedings had in the case of "Hairgrove against Thomas Jackson and others," which constitutes the foundation for the defendant's sheriff's deed. Hence, if this record should be defective in any essential and material particular, the sheriff's deed founded thereon must be void. Now said record seems to show that no judgment was ever entered of record in said case of "Hairgrove against Jackson and others." And as judgments can be proved only by a record, it would seem to show that no such judgment was ever rendered. There is no *record* of any such judgment, and hence, for the purpose of the case, we are bound to say that no such judgment was ever rendered. And there being no judgment, said sheriff's deed of course is void. It cannot exist without having a judgment as a foundation. It is also claimed by the plaintiffs that said sheriff's deed is void for other reasons, but we do not think that the claim is tenable. What answer the defendant would make to the different claims of the plaintiffs, we are a loss to know, for the defendant has filed no brief, nor made any oral argument in this court.

We should think from the record brought to this court that a judgment had in fact been rendered in the said case of "Hairgrove against Jackson and others," but that it had 2. Entering judg- never been entered of record on the journals ment nunc pro tunc. of the court. We think the evidence furnished by the record itself strongly proves this to be true. And if we are correct in all this, it would be an easy matter, in a proper proceeding, and with proper notice to all parties interested, to have the judgment that was actually rendered entered of record, *nunc pro tunc*. The verdict of the jury, and the paper signed by the judge, show what the judgment actually rendered but not entered was. And if such judg-

ment was entered *nunc pro tunc*, it would probably uphold said sheriff's deed, not only as against these plaintiffs who merely claim as heirs of said Thomas Jackson, but as against others also, for the defendant and his grantors have been continuously in possession of the property for many years, their possession commencing before the death of said Thomas Jackson.

The judgment of the court below is reversed, and cause remanded for a new trial.

All the Justices concurring.