GEORGE A. CLARK, JOHN SMITH, M. W. CHAMNESS AND JOHN A. RATLIFF v. BANK OF HENNESSEY, a Corporation.

(Filed September 3, 1904.)

1. REFEREE'S REPORT—District Court May Extend Time for Filing. Where the district court, by an order appointing a referee, limits the time within which he shall file his report, the court may for cause, and within the time limited, extend the time within which such report may be filed.

2. DISTRICT COURT—Power of Amendment. District courts in this Territory have the power, while a case is pending and before final judgment, to correct and amend the record or any order or proceeding had in such case, to conform to the facts by a nunc pro tunc order, and are not confined to any one class of evidence, but may proceed upon satisfactory evidence.

3. REFEREE'S REPORT—Motion to Strike From Files. It is not error for the trial court to overrule a motion to strike the referee's report from the files for the reason alone that the defeated party was not notified of the finding and conclusions of the referee, where it is not shown that any substantial right was prejudiced thereby.

4. BOND—Omission of Principal's Name. The omission of the name of the principal, as one of the signers of a bank cashier's bond, even where his name appears in the body of the bond as principal, is a mere technical defect, and will not release the sureties, except in case where the sureties sign upon conditions known to the obligee, that the bond is not to take effect until signed by the principal.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before C. F. Irwin, Trial Judge.*

*Matthew John Kane* and *P. S. Nagle,* for plaintiffs in error.

*Lee M. Gray* and *Stevens & Miller,* for defendant in error.

## STATEMENT OF FACTS.

This is an action commenced in the district court of Kingfisher county by the defendant in error against plaintiffs in error, as sureties on a bond of Homer L. Chamness, as cashier of the Bank of Hennessey. Plaintiffs in error filed separate answers to the petition, containing, first, a general denial; second, that at the time the bond was presented to the defendants for their signatures the name of Homer L. Chamness, as principal, was written in the body of the bond, and the defendants signed the bond upon the express condition that H. L. Chamness should sign it before delivering it to the obligee. After issues joined, on the 27th day of September, 1901, the case was referred to J. C. Robberts, as referee, with power to find on questions of law and of fact, and to report at the next term of court. Trial was had before the referee on the 10th day of February, 1903, The referee made the following findings:

"1. That the plaintiff was duly incorporated under the laws of the Territory of Oklahoma, and authorized to carry on a general banking business as alleged in its petition.

"2. That Homer L. Chamness, the person named as principal in the bond sued on, was duly elected and acting cashier of said bank, plaintiff, at the times alleged in said petition.

"3. That on the 15th day of March, 1899, the defen-

dants executed the bond sued on, and delivered the same, to the said Homer L. Chamness.

"4. That the body of said bond had written therein, at the time each of said defendants signed the same, the name of Homer L. Chamness as principal.

"5. That each and all of said defendants knew that the name of said Chamness was written in the body of said bond at the time they signed the same and delivered it to said Chamness.

"6. That at the time defendants signed and delivered said bond to said Chamness, they told said Chamness that they signed said bond upon the condition and understanding that said Chamness was also to sign the same as principal before the delivery thereof.

"8. The plaintiff introduced evidence tending to show that the defendants were present at the time Chamness delivered the bond to the bank. All of the defendants denied that fact. Upon that proposition I find that none of the defendants were present at the time of the delivery of said bond to the plaintiff.

"9. That the conditions upon which said bond was signed by said defendants was not communicated to the plaintiff, nor any of its officers, and the plaintiff had no notice nor knowledge of the conditions upon which the said defendants signed said bond, other or different than such notice would be implied by the fact that the name of Chamness was written in the body of said bond as principal, and not signed by him.

"10. That on the 24th day of March, 1899, each and all of said defendants subscribed and was qualified to the value of the property owned by them respectively; and said qualification was attached to the bond at the time the same was signed by the defendant.

"11. The defendants offered no evidence tending to show that at the time they were qualified as to the value of their property they mentioned the condition upon which they

had signed said bond, nor was any evidence offered tending
to show that objections were made at that time by either
of them to the fact that Chamness had not signed the bond
as principal.

"12.   Said bond was delivered to the plaintiff by Homer
L. Chamness on the 24th day of March, 1899, after said de-
fendants had been qualified to the same, and at the time of
the delivery of said bond to plaintiff it had not been signed
by Chamness, and plaintiff had no notice of the conditions
upon which said bond had been signed by defendants, other
than such notice as would be implied from the conditions
of the bond at the time it was delivered."

On the first day of October, 1902, a term of court hav-
ing intervened since the appointment of the referee, the ref-
eree filed his report. On the 23rd day of October, 1902, plain-
tiffs in error filed their motion to strike the report of the
referee from the files. On the 9th day of March, 1903, the
defendant in error filed its motion for a *nunc pro tunc* order,
showing that at the April, 1902 term of said court, the court
extended the time in which the referee should report until
the next regular term thereof.

Affidavits and evidence were offered in support of the
application, including an entry upon the judge's trial docket,
and the record discloses the following statement of the court:

"The court states that he has a distinct recollection of
Mr. Robberts, the referee, stating to him that he hadn't en-
tirely prepared his report to file, and that he wanted addi-
tional time.   The recollection of the court is that he asked
that the report be deferred until the next term of court
and the court stated to him, 'Very well, you can have the
time,' meaning and intending to have it continued for the
term.   The court at that time made a minute on his docket,
which seems to read: 'Passed for report of referee,' but
the true entry on the docket would indicate the order made

by the court and intended by him should have been: 'Continued for the term.' "

Thereupon the court overruled plaintiffs in error's motion to vacate and set aside the report of the referee, to which they excepted, and the court made the following order:

(After title of cause).

"And now on this 9th day of March, A. D., 1903, this cause came regularly on to be heard on the motion and application of J. C. Robberts, referee, and said plaintiff, for a *nunc pro tunc* order showing that on the —— day of April, A. D., 1902, at the April, 1902, term of said court, the court extended the time in which the referee should report, until the next regular term thereof. Said plaintiffs appearing by their attorneys, Lee M. Gray and Stevens & Miller, and the defendants appearing by their attorneys, P. S. Nagle, M. J. Kane and W. A. McCartney, and the court after hearing the evidence in support of said motion, the argument of counsel thereon, and being fully advised in the premises, finds that the court on the —— day of April, 1902, at the April, 1902 term of said court, did make an order extending the time in which the referee in said cause should report, until the next regular term thereof; that by inadvertence and mistake said order was not entered on the journals of said court, and that an order ought to be now entered as of and for the said —— day of April, A. D., 1902, as follows:

" 'And now on this —— day of April, A. D., 1902, this cause came regularly on to be heard upon the application of the Hon. J. C. Robberts, referee, for an extension of time in which to file his report as such referee, and the court after being fully advised in the premises, finds that the time formerly allowed by the court to said referee in which to make his report is insufficient, and ought to be extended until the next regular term of this court. It is therefore by the court considered, ordered and adjudged that the time for making and filing of the report of the referee in said cause is hereby

extended until the next regular term of said court.'

"It is therefore by the court considered, ordered and adjudged that there be entered at this time upon the journal of this court, the following order, to wit:

" 'And now on this —— day of April, A. D., 1902, this cause came on to be heard upon the application of Hon. J. C. Robberts, referee, for an extension of time in which to file his report as such referee, and the court, after being fully advised in the premises, finds that the time formerly allowed by the court to said referee in which to make his report is insufficient and ought to be extended until the next regular term of this court. It is therefore by the court, considered, ordered and adjudged that the time for making and filing of the report of the referee in said cause is hereby extended until the next regular term of said court.'

"And that said order be here entered as of and for the said —— day of April, A. D., 1902, to all of which the defendants at the time objected and excepted, and object and except."

On the 13th day of March, 1903, plaintiffs in error filed their motion for judgment on the findings of fact of the referee, notwithstanding the recommendations of the referee; and on the 14th day of March, defendant in error moved the court for judgment upon the findings and report of the referee. On the 23rd day of March, the motion of plaintiffs in error for judgment was overruled, and the motion of the defendant in error sustained, to which plaintiffs in error excepted, and judgment was rendered for defendant in error against plaintiffs in error in the sum of $1886.36, interest and costs. Motion for a new trial was heard and overruled by the court; exceptions allowed to the orders and the judgment. Plaintiffs in error bring case here on petition in error and case made for review.

Opinion of the court by

BEAUCHAMP, J.:   The points relied on by the plaintiffs in error and argued by counsel in their brief are, first, that:

"The term of court at which the referee was required to report, having expired before the report was filed, the referee lost his power conferred on him by the court, and when he filed his report at the subsequent term it was a mere volunteer report without validity."

It will be observed from the statement of facts that a term of the district court had intervened between the time of the original order appointing the referee and requiring him to report at the next term of court, and the time at which the report was in fact filed, and that thereafter the plaintiffs in error filed a motion to strike the report of the referee from the files for the reason that the referee did not file his report within the time fixed by the court, and that he had no jurisdiction to file a report after the time fixed by the court had expired.   Pending this motion the defendant in error filed a motion for an order *nunc pro tunc,* showing that the referee in said cause was, at the April, 1902 term of said court, allowed until the next term of said court in which to make his report; and in support of which motion as before stated, offered testimony including the entry upon the judge's trial docket, and the court found that such an order was in fact made, and granted the motion.   It 'is not contended by plaintiffs in error that the court had not the power to extend the time in which the report of the referee might be filed, but it is contended that there was not sufficient evidence to warrant and justify the court in making a *nunc pro tunc* order.   The fact that an order was made as found by the court extending the time in which the referee should report

is not disputed, but it is only contended that the evidence in support of the motion for a *nunc pro tunc* order is not sufficient to establish the fact that such an order was in fact made, and plaintiffs in error argue that "While parol evidence is competent, it is not, of itself, unaided by any notes, minutes, or memorial, sufficient to authorize a *nunc pro tunc* entry," and that "taking the judge's statement as a correct recital of what actually occurred, and what was intended, it could hardly be taken as sufficient data upon which to base the order made and entered." It will be seen that the order made by the court was made while the case was still pending, and before final judgment. It is not only within the powers of the trial court, while a case is pending before him, to see that the records speak the truth, but it is his duty, and where the clerk by neglect or otherwise has failed to make a proper record of the proceedings had in the case, the court has the unquestioned power to require a correction or amendment of the record to conform to the facts, to the end that justice may not be defeated by a mere oversight or clerical error. Section 4309, Statutes of Oklahoma, 1893, provides that:

"When the judicial acts or other proceedings of any court have not been regularly brought up and recorded by the clerk thereof, such court shall cause the same to be made up and recorded within such time as it may direct. When they are made up, and upon examination, found to be correct, the presiding judge of said court shall subscribe the same."

Sec. 4464. "The district court shall have power to vacate or modify its own judgments or orders, at or after the term at which such judgment or order was made; * * * * *.

"Third, for mistake, neglect or omission of the clerk, or irregularity in obtaining a judgment or order."

The Statutes of Nebraska contain provisions identical with the provisions of section 4464 quoted; and the supreme court of that state, in the case of *Brownlee v. Davidson*, 45 N. W. 52, in the opinion by Norval, J., say:

"It is firmly settled that a court of general jurisdiction, like the district court, has ample power, at a subsequent term, to correct any errors or defects in the record of its judgments or decrees which occur through the mistake or neglect of the clerk of the court, so as to make the judgment entry correspond with the judgment actually rendered. This authority in this state is expressly conferred by statute. Subdivision 3 of section 602 of the code authorizes the district court to vacate or modify its own decree, after the term at which it was rendered, 'for the mistake, neglect or omission of the clerk.' Proceedings for that purpose must be commenced within three years after the rendition of the decree."

But aside from the statutes of this Territory quoted, the district court has the inherent power, while a case is still pending and before final judgment, to correct and amend the record of any order or proceeding had in such case to conform to the facts, to see that the record becomes in fact what it is in law, an absolutely truthful record of what in fact occurred, and while the court should on proceedings to correct the record proceed with caution for the purpose of supplying the record, it is not confined to any one class of evidence but may proceed upon satisfactory evidence. In the case of *School Dist. No. 1 of Harlan County v. Bishop et al.*, 65 N. W. 902, the supreme court of Nebraska, in the opinion of the court by Irvine, C., say:

"It is strenuously argued that the *nunc pro tunc* order was erroneous, not because it was not entered in accordance with the facts, but because it was made on oral testimony alone, without any support from the judge's minutes, the files, or other entries of record; and cases are cited which hold that a *nunc pro tunc* order for the purpose of supplying the record must be based on some entry, and cannot be made to depend upon oral testimony. We think the weight of authority is now contrary to this view."

This was a case in which an order of dismissal had been made and entered, and six days later a motion was filed to reinstate the case, but no entry was made at that term of any order on. the motion to reinstate. At the subsequent term another judge presided, and entered a *nunc pro tunc* order finding that the motion to reinstate had by the former judge been overruled, and plaintiff had excepted to such ruling, and directed the clerk to reform the record accordingly.

In *Savings Inst. v. Clark,* 12 Neb. 578, 12 N. W. 103, it was held that the judge's minutes are *prima facie* evidence of the proceedings, but may be shown to differ from the judgment actually rendered. *Brownlee v. Davidson, supra,* and *Hoagland v. Way,* 53 N. W. 207, also assert the full power of the court to amend its record to conform to the facts.

In the case of *Jacks et al. v. Adamson,* 47 N. E. 48, the supreme court of Ohio, speaking upon the question as to the necessity of a record, in its opinion by Shauck. J., says:

"In proceedings of this character, whether the order has been made is a question of fact. It seems more consonant with the purpose for which the power of making entries *nunc pro tunc* is exercised, and with the reasons involved, that in determining the question of fact the court should

resort to all sources of information, that are competent under general rules, including oral testimony of witnesses who have personal knowledge upon the subject. The proceeding presupposes the absence of a record upon the subject, and the court should receive the best evidence of which the case admits."

And cites numerous authorities.

In the case of *In re Wight*, 134 U. S. 136, being a case in which the petitioner was indicted, and the case subsequently transferred from the circuit court for the eastern district of Michigan to the district court, and sentence passed in the district court, in the opinion of the court by Mr. Justice Miller it is said:

"That it could only be remanded from the circuit court into the district court by some order or action of the former. No such order was found upon the records of the circuit court at the time of sentence upon the prisoner in the district court; if no such order had been made previous to that judgment, the case was still pending in the circuit court, and the district court had no authority to pass the sentence it did upon the prisoner. This view of the subject calls upon us to inquire whether the *nunc pro tunc* order of September 30 was a valid one, and one within the power of the circuit court to make.

"Our first impression was that whatever might be the powers of the courts in this regard over their records during the term in which the transactions are supposed to have occurred, the record of which, or failure to make any record of which, is the subject of amendment, yet when it was attempted to do this after an adjournment and at a subsequent term of the court, the powers of the court in making such changes in the records of the proceedings were limited to those in which there remained written memoranda of some kind in the case, and among the files of the court, by which

the record could be amended, if erroneous, or the proper entry could be supplied, if one had been omitted. And especially that in criminal procedure this power to make such entries, at a subsequent term of the court, of what had transpired at a former term, as would establish the authority of the court to pass a sentence of fine or imprisonment, either did not exist at all, or if it did, was limited to cases in which some written evidence of what was done remained in the papers connected with the case.

"We are satisfied, however, upon an examination of the authorities, that this restriction upon the power of the court does not exist."

· · And numerous authorities are cited sustaining this view.

While there are some authorities holding the contrary view, as expressed in the authorities cited, that the district court has an inherent authority to amend its records so as to make them speak the facts, and that this power extends as well to supplying omissions as to correcting mistakes, and that in the exercise of that power the court is not confined to an examination of the judge's minutes or written evidence, but may proceed upon any satisfactory evidence.

Our attention is directed to the case of *Bank of Kingfisher v. Smith et al.,* 2 Okla. 6, wherein the rule is stated, "That while parol evidence is competent, it is not, of itself, unaided by· any other notes, minutes or memorial, sufficient to authorize a *nunc pro tunc* entry. It may be competent and yet insufficient." From an examination of that case, it will be found that the conclusions there reached were based upon the decisions of the supreme court of the State of Indiana, from which state our code˙ of civil procedure of 1890 was adopted. In the opinion by Scott, J., it is said:

"In view of the rule thus unquestionably established in the state from which our procedure was adopted, it seems that this consideration alone is fatal to appellants, and renders unnecessary the discussion of less salient questions."

The Kansas supreme court, from which our present code was adopted, and before the adoption thereof by this Territory, had occasion to pass upon like questions and have construed the statutes before cited. (*Small v. Douthitt*, 1 Dassler, 317; *Jackson v. Latta*, 15 Kan. 216; *Aydelotte et al. v. Brittan et al.*, 29 Kan. 98).

The district court, within the time limited in the original order, had the power to extend the time within which the referee should file his report, and the report of the referee was filed within the extension of time granted.

Second. Plaintiffs in error contend that "not being served with notice of the completion of the referee's report, before it was filed, it was error for the court to refuse to strike it from the files." Sec. 4185, Statutes of 1893, provides: "It shall be the duty of the referees to sign any true exceptions taken to any order or decision by them made in the case, and return the same, with their report, to the court making the reference." While this statute does not in express terms require that the referee shall give notice of the filing of his report, it is undoubtedly contemplated that the parties shall be informed as to the findings and decisions of the referee, for by its plain provisions, the exceptions shall be signed by the referee, and he shall return the same with his report to the court making the reference. We have no doubt but that in a case where a referee's report is filed without notice, that upon a showing by a party that by reason thereof he was deprived of a substantial right to his preju-

dice, the court would, if necessary to protect such party's rights, vacate and set aside the report, but in this case the record discloses that counsel for plaintiffs in error was, long prior to the time that the report was filed by the referee, shown the report, which then included his findings of fact, but not the conclusions of law. It is not disclosed by the record that any further attempt was made by plaintiffs in error to see the report of the referee or to ascertain his findings or conclusions of law, or so far as the record discloses, was any further attempt made to save any exceptions, the only objection being, and that after the report was filed, that the plaintiffs in error had not had notice of the filing of the report. Under the facts in this case, it not being shown that plaintiffs in error desired to file any exceptions to the report of the referee, or that any substantial right was prejudiced by reason of not having notice of the filing of the report, it was not error for the trial court to overrule the motion for the reason alone that the plaintiffs in error did not have notice.

Third. Again plaintiffs in error contend that they are released by reason of the failure of the principal named in the body of the bond to sign it, and that the fact that the name of the principal, H. L. Chamness, was written in the body of the bond at the time of its execution and delivery was sufficient notice to defendant in error of the conditions under which the bond was signed; and the defendant in error having accepted the bond in the incomplete condition in which it was at the time of its delivery, cannot be heard to say that it had no notice of the agreement found by the referee to exist between the principal and plaintiffs in error,

viz: That the bond should not be delivered until signed by the principal. As to whether the sureties under the facts in this case are estopped from asserting the failure of the principal to sign because of this conduct or neglect, we do not now deem necessary to decide.

Section 10 of art. 14, chap. 4, Laws of Oklahoma, 1899, provides: "* * * The board shall require the cashier and any and all officers having the care and handling of the funds of the bank to give a good and sufficient bond, to be approved by them and held by such custodian as the board may designate."

In the case of *State ex rel. v. Eggleston,* 34 Kan. 722, being a case in which the plaintiff or principal had failed to sign an injunction bond under the statutes of that state, which are identical with the statutes of this Territory with reference to the requirement of giving bond in injunction cases, the supreme court of that state say in the opinion by Horton, C. J.:

"* * * As in this state all obligations are several as well as joint, we think that where an injunction suit is brought by the state, upon the relation of a proper party, a bond furnished by the plaintiff and executed by sufficient securities would be valid and legal. * * *."

It will be seen that the bond in this case by its express provisions is a joint and several obligation, and that the statutes of this Territory quoted do not require that the cashier shall sign the bond but only provide that he shall give bond which shall be approved by the board.

Throop on Public Officers, section 196, states the rule to be:

"But where there is no statutory provision, the sureties are liable if the bond is filed without its execution by the

principal, although they executed it in reliance upon his promise to also execute it."

Stearns on Suretyship at page 268, states the rule: "The omission of the name of the principal, as one of the signers of an official bond, even where his name appears in the body of the instrument as an obligor, is a mere technical defect, and will not release the surety, except in those cases . where the surety signs upon conditions known to the obligee. that the bond is not to take effect until signed by the principal. The sureties are not injured by the failure of the principal to sign; if they are compelled to pay the penalty of the bond because of the default of the principal they can recover the amount back from the principal, whether he signed the bond or not. Where the bond is accepted and approved without the signature of the principal, and the latter enters upon his office by reason of the reliance of the obligee upon the bond, it would be giving the sureties the benefit of the contract without imposing its burden to permit them to escape liability."

In the case of Tillotson v. State, 29 Kans. 452, being an action upon a criminal recognizance, the court in the opinion by Valentine, J., says:

"The point that the recognizance is void because the accused did not sign the same, we think, is not tenable. At common law it was never necessary for any person to sign the recognizance. Under the statute it is only necessary for those to sign the recognizance who are to be bound thereby, and it is never necessary under the statute for the accused to sign the recognizance unless the statute absolutely requires the same to be done."

In the case of the State v. McDonald, [Idaho,] 40 Pac. 312, it is said:

"The omission of the sheriff to sign his official bond did not release him from any liability arising under the condi-

tions of the bond, nor did such omission release the sure-
ties."

In the case of *Pima County v. Snyder,* [Arizona,] 44
Pac. 297, it is said:

"Hence, under the instrument sued on, the liability of
the principal being fixed by law, and such principal having
entered upon the duties of the office and received the emol-
uments thereof, and the sureties having signed the bond for
the faithful performance of the duties of such office, it would
be a good obligation against them, and for any default upon
his part, they should be held.    *    *    *"

In the case of *Douglas County v. Bardon et al.,* [Wis.,]
48 N. W. 969, we quote from the syllabus:

"Where the bond of a county treasurer recites that he
and his sureties 'are each severally held and firmly bound'
and do bind themselves 'severally and firmly by these pres-
ents,' the failure of the treasurer to execute the bond, does
not render it void, and the sureties are liable."

In the case of *Williams v. Marshal,* 42 Barb. 524, it is
said:

"Though the name of the principal debtor is inserted
in a bond as one of the obligors, the instrument need not
be subscribed by him in order to make it binding on co-
obligors."

The case of *St. Louis Brewing Ass'n. v. Hayes et al.,*
97 Fed. 859:

"Where the failure of a principal named in a bond to
sign it in no way affects the rights or liability of the sureties,
as where he is equally bound by the contract, to secure the
performance of which the bond is given, and under the laws
of the state the rights of the sureties are the same in that
case as though he had signed the bond, his omission to sign
it does not relieve the sureties from liability thereon."

Many other cases might be cited to the same effect as

the above cases; and while there is some conflict, we think the more modern and better weight of authority sustains the rule laid down in the authorities quoted.

While it would be exceedingly unjust to hold that a surety would be bound by a bond when not signed by the principal named in it as obligor, where the failure of the principal to sign would materially affect the obligations and rights of the surety, we cannot see in the present case wherein the failure of Chamness to sign the bond in any way affects the rights or liabilities of the plaintiffs in error. Plaintiffs in error could be held liable for no sum unless Chamness was also liable for the same sum. The signing of the bond would not change the liability of Chamness in any way. In the event the sureties are required to pay the penalty of the bond, his failure to sign could not defeat a recovery by them against him, so that we are unable to see any reason why the mere failure of Chamness to sign the bond in question should be permitted to defeat a recovery upon the bond, since the same was accepted and relied upon by the defendant in error, and under such circumstances it would be injurious to hold that by reason of a mere technicality, which in no way could affect the substantial rights of the parties, that the plaintiffs in error could defeat the obligation assumed by them. But counsel for plaintiffs in error contends, and the referee found, that at the time the bond was signed by the plaintiffs in error they signed the same with the understanding that it should be signed by Chamness, and notwithstanding that the defendant in error had not notice of this agreement or condition, that the fact that the bond recites upon its face the name of the principal was sufficient to put plaintiffs upon inquiry, and that notice

is implied, and authorities are cited by him to the effect that where statutes require that the principal shall sign the bond that the absence of the signature of the principal is sufficient to place the obligee upon inquiry; and still other cases are cited, holding, where provisions of the instrument require the same to be signed by the principal, that the absence of his signature is sufficient to place the obligee upon inquiry, and still others, holding that, where the law requires the principal to sign the bond, his failure to do so will discharge the sureties, and the obligee takes the bond with notice of the conditions. But under the statute of this Territory quoted, there is no requirement, nor is it necessary that a principal shall sign a bond. It is only required that he shall "give" bond, and there is nothing in the stipulations or conditions of the bond which requires that it should be signed by Chamness, but it only provides for the faithful performance of his duties as cashier; for which plaintiffs in error in this case undertook and bound themselves. Under such circumstances there is nothing which would charge the defendant in error with implied notice of the secret agreement between Chamness and the plaintiff in error.

Under the authorities cited and the conclusions reached by us, there being no further questions raised by plaintiffs in error, the judgment of the district court of Kingfisher county is affirmed, with costs to the plaintiff in error.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.