# CRUDUP *et al.* v. OKLAHOMA PORTLAND CEMENT CO.

No. 6852. Opinion Filed March 28, 1916.

(156 Pac. 899.)

1. **SUNDAY—Validity of Contracts—Execution of Instrument.** The bond sued on bore date Monday the 5th day of May, but was signed on Sunday and delivered on a day other than Sunday. **Held** that said bond did not become effective until delivery, and was not invalid on the ground that it was signed on Sunday.

2. **PRINCIPAL AND SURETY—Obligation of Principal—Signature.** In the body of the bond sued on it purported to have been made by D., as principal, and B. C. M. and I., as sureties. The principal failed to sign the bond, but the same was signed by the sureties. Under the law as applied to the facts of this case, the principal was bound as fully for the obligation secured by the bond, without signing it, as if it had been signed by him. The facts fail to show that it was the intention of the sureties that they should not be liable unless the principal signed. **Held**, the omission of the obligor to sign said bond did not have the effect of releasing the sureties of any liability.

3. **SAME—Discharge of Surety—Alteration of Contract.** The court found there were some slight changes made in the plans of the building and in its construction, the proof showing that such changes did not increase the cost of construction. These changes were made between the contractor and the builder without the knowledge and consent of the sureties or of the plaintiff, one of the beneficiaries in such bond. The court further found that the building contract provided for changes to be made between the contractor and builder. **Held**, that under the findings of the court the sureties were not released by reason of such changes.

4. **SAME—Estimate of Architect.** The court further found that the architect in charge of said building in accordance with the building contract gave the contractor estimates in amounts not to exceed 90 per cent. of material and work furnished, except in one instance, where the estimates exceeded 90 per cent., which were made unintentionally and upon representations made by the contractor. **Held**, such facts did not have the effect of releasing the sureties.

5. **MECHANICS' LIENS — Indemnity Bond — Person Entitled to Maintain Suit.** One provision of the bond specially provided se-

curity for persons who might furnish material or labor in the construction of said building, without regard to whether such claims were to be a lien upon said building or not. Plaintiff furnished cement which was sold and delivered for the purpose of being used in the construction of said building, and was one of the beneficiaries in the contract; and one provision of the contract was intended as security for the claim sued on. **Held**, plaintiff was authorized to maintain this suit.

6. **NO PREJUDICIAL ERROR.** Upon an examination of the entire record, we find there was no prejudicial error, affecting the substantial rights of the defendants or causing a miscarriage of justice, requiring a reversal.

(Syllabus by Linn, C.)

*Error from District Court, Bryan County;*
*Jesse M. Hatchett, Judge.*

Action by the Oklahoma Portland Cement Company against R. L. Crudup and others. Judgment for plaintiff, and defendants bring error. Affirmed.

*Utterback & McDonald,* for plaintiffs in error.

*Hayes & McIntosh,* for defendant in error.

Opinion by LINN, C. The Oklahoma Portland Cement Company, defendant in error and plaintiff below, by proper proceedings in the district court, sought a recovery against defendants as sureties upon a certain obligation executed in favor of the independent school district of Celeste, Tex., and primarily for its benefit, but with a provision intended as security for parties who might furnish material, labor, etc.

In substance, among other things, it was alleged in the petition that plaintiff had furnished cement to the value of $503.10 which was used in the construction of a certain school building, and that defendants had refused to pay the same or any part thereof. A copy of the instrument sued on was attached to and made a part of the peti-

tion. Plaintiff prayed judgment for said amount with interest and a reasonable attorney's fee, which was provided for in said bond. The defendant Sam Dane filed a separate answer. The other defendants, the sureties, filed a joint answer. But both answers were substantially to the same effect. After a general denial, it was alleged, in substance: That the bond was signed on Sunday; that plaintiff was not entitled to recover under the law, for the reason that no lien could attach in its favor upon the building constructed; that the material furnished to the amount of $250 was not used in the construction of the building; that the architect for the school district, in violation of the building contract, and without the knowledge of the defendants, made certain changes in the plans, increasing the cost in material used in said building; that the said obligee, in violation of the building contract, paid the contractor in excess of 90 per cent. of the estimate provided for therein; that the directors of the school district, without a good cause, discharged the contractor and took charge of the building; that said bond was not signed by the principal obligor.

The obligation, the basis of this suit, among others, contains the following provision, to wit:

"It is also understood that this bond shall be considered as made to all creditors and conditioned that said contractor shall pay all indebtedness incurred for labor or material furnished in the construction of a certain 63 ft. x 107 ft. brick school building in accordance with plans, specifications and contract and any person or persons to whom there is due any sum of money for labor or material furnished as stated in said specifications and contract, or his assigns, may bring action on this bond for said indebtedness in the sum of $10,000.00, lawful money of the United States of America to be paid to the said superintendent of the school district of Celeste, Tex., through

the school board and parties who may be entitled to any moneys as aforesaid, their executors, administrators or assigns, for which payment well and truly to be made, we bind ourselves and each of our heirs, executors, administrators, jointly and severally firmly by these presents."

The cause was tried to the court, and separate findings of fact and law, being requested, were made and filed, and judgment based thereon was rendered in favor of plaintiff in the sum of $253.10, and the further sum of $50, attorney's fee. Motion for a new trial was filed, overruled, and exceptions saved, and error has been prosecuted to this court by defendants filing their petition in error with case-made attached.

Various assignments of error are alleged, which we deem unnecessary to set out at length, but counsel for plaintiffs in error present certain questions for our determination, in substance, as follows: (1) What constitutes a bond, and what is a proper and legal execution thereof? (2) What changes in the original contract will release the sureties on the bond? (3) Will payment made to the contractor in excess of the amount specified in the contract release the sureties? (4) Did the obligation sued on secure the plaintiff a right of action against the sureties, said plaintiff under the law not having a lien against the building constructed? These questions will be considered in the order in which they are presented.

First. It is the contention of the plaintiffs in error that the purported obligation sued on is not a legal bond; (a) For the reason it was not signed by the purported obligor; and (b) that it was signed by the sureties on Sunday, hence is void.

Under the facts found by the court, which findings are not seriously questioned by counsel as not supported by sufficient evidence, we are constrained to hold that the bond in question is not invalid for either of the assigned reasons. Under the second finding of fact, the court found that while the bond was signed on ·Sunday in the State of Oklahoma, it bore date of the 5th of May (Monday), and that the bond was delivered by the contractor, the principal obligor, on a date other than Sunday; that the beneficiaries in the bond had no knowledge that it was signed on Sunday.

Undoubtedly the rule is supported by the great we:ght of authority that in the absence of a special statute making a contract void when executed under the circumstances as here, the same is not void. *Hall v. Parker,* 37 Mich. 590, 26 Am. Rep. 540; *Evansville v. Morris,* 87 Ind. 269, 44 Am. Rep. 763; *Terry v. Platt,* 1 Pennewill (Del.) 185, 40 Atl. 243; *Hofer v. Cowan* (Ky.) 68 S. W. 438; *Barger v. Farnham,* 130 Mich. 504, 90 N. W. 281; *Diamond Glass v. Gould* (N. J. Sup.) 61 Atl. 12; *Gibbs & Sterrett v. Brucker,* 111 U. S. 597, 4 Sup. Ct. 572, 28 L. Ed. 534.

In the case of *Gibbs & Sterrett v. Brucker, supra,* where a bond in the State of Wisconsin was signed and delivered on Sunday to a representative of the obligee, but such obligee had no knowledge of such fact, which case arose under a statute of that state making it a criminal offense to do any manner of labor, business, or work on Sunday, except work of necessity and charity, the court, speaking through Mr. Justice Woods, said:

"The grounds upon which courts have refused to maintain actions on contracts made in contravention of statutes for the observance of the Lord's day is the ele-

mentary principle that one who has himself participated in the violation of the law cannot be permitted to assert in a court of justice any right founded upon or growing out of the illegal transaction."

It will be noted that the statute referred to in the decision quoted from is similar to the statute of this state.

There being no specific statute in this state making a contract void when signed on Sunday but delivered on a week day, we are impelled to hold that the bond in question is not void solely on the ground that it was signed on Sunday, when, as here, it bore date of a week day, and was delivered on a day other than Sunday. The law is well settled that an agreement does not become a complete and effective contract until delivery; in other words, the execution of a contract includes both the signing and delivery.

We are also of the opinion, whatever may be the rule in other states, that in this jurisdiction the fact that the bond was not signed by the contractor, the principal obligor, under the circumstances as here, did not have the effect to render it invalid. This was the rule announced by the Territorial Supreme Court in the case of *Clark v. Bank of Hennessey,* 14 Okla. 572, 79 Pac. 217, 2 Ann. Cas. 219, the fourth paragraph of the syllabus of which reads:

"The omission of the name of the principal, as one of the signers of a bank cashier's bond, even where his name appears in the body of the bond as principal, is a mere technical defect, and will not release the sureties, except in cases where the sureties signed upon conditions known to the obligee that the bond is not to take effect until signed by the principal."

The doctrine announced in this case has been approved by this court in the case of *Daman et al. v. Chamberlain,* 26 Okla. 631, 110 Pac. 1056. Counsel for plaintiffs in er-

ror contend, however, that the bonds involved in the case of *Clark et al. v. Bank of Hennessey, supra,* and in *Daman et al. v. Chamberlain, supra,* were in the nature of quasi official bonds provided for by law, and that this fact would take the present case outside the rule there announced. We are unable to agree with counsel in this contention. The true rule seems to be that if the principal obligor would be primarily bound for the obligation sought to be secured by the giving of the bond as fully without signing the bond as if signed by him, then the signing of such bond would be a mere form and an omission to do so by the principal would render it only technically defective, but such omission could in no case prejudice the rights of the sureties. It needs no argument or citation of authority in this case to show that the principal obligor is as fully bound for the obligation for which the sureties bound themselves without signing the bond as he would have been had he signed the same. The court did not find, neither did the evidence disclose, that the sureties intended that the obligation should not become effective unless signed by the principal.

There is no presumption arising that such a bond was not to be considered binding upon those signing until executed by all the obligors named in the body thereof. On the contrary, its execution is deemed *prima facie* complete, and it is for those who executed it to show that they were not to be bound unless it was executed by others. 32 Cyc. p. 50; *People v. Stacy,* 74 Cal. 373, 16 Pac. 192; *Towns v. Kellett,* 11 Ga. 286; *Johnson v. Weatherwax,* 9 Kan. 75; *Stevens v. Wallace,* 5 T. B. Mon. (Ky.) 404; *Cutter v. Whittemore,* 10 Mass. 442; *Reed v. McGregor,* 62 Minn. 95, 64 N. W. 88; *State v. Sandusky,* 46 Mo. 377; *Mullen v.*

*Morris,* 43 Neb. 596, 62 N. W. 74; *Blume v. Bowman,* 24 N. C. 338; *Whitaker v. Richards,* 134 Pa. 191, 19 Atl. 501, 7 L. R. A. 749, 19 Am. St. Rep. 684; *Ward v. Churn,* 18 Grat. (Va.) 801, 98 Am. Dec. 749; sections 151, 152, Brandt on Suretyship and Guaranty.

Had the evidence shown that the liability of the sureties was conditioned only upon the contractor, the principal obligor, signing the bond, as where surety signs an obligation on condition that certain other parties are to sign as sureties before the same shall become effective, and such facts are known to the obligee, then a different rule would apply. In such cases it is generally held that the liability of the surety never attaches.

The second and third contentions made by the plaintiffs in error are that the sureties were released for the reason that certain changes were made in the plans to the building without first being reduced to writing, and further, on account of payments being made to the contractor on estimates of the architect in excess of 90 per cent. as specified in the building contract. As a general rule, a surety is only held liable upon the exact contract on which he has bound himself, and a strict compliance with terms of the contract which he has entered into will generally be required, and any material change therein without the surety's consent will release him. Some authorities hold that changes in the contract made between the principal obligor and the obligee without the consent or knowledge of the surety, although such change does not increase his liability, will have the effect of releasing him. The trial court finds that some slight changes were made in the plans of the building between the contractor and the school district officers, the exact nature of which, from the testimony, could not be defi-

nitely ascertained, but that such changes did not increase the costs of the construction, and that neither the plaintiff nor the sureties had any knowledge of such changes. The court further finds that the building contract authorized changes to be made by agreement between the contracting parties. There is no finding to the effect that such agreement providing for such changes should be in writing. The record discloses, however, that verbal testimony was introduced tending to show that the contract provided that any changes to be made should first be reduced to writing.

We are of the opinion that in view of the findings of the court and the fact that the plaintiff had nothing to do with such changes, or knowledge thereof, the same would not have the effect of releasing the sureties so far as affects the rights of the plaintiff. Several authorities are cited, including one case from this court, to the effect that any material changes or deviation by consent of the contractor and the builder without the consent of the surety will have the effect to release him. But an examination of these cases will disclose that such changes were made between the contractor and builder without the consent of the sureties, and that the builder afterward sought relief against the sureties. Where the contract provides, as here, for a class of beneficiaries, securing them against loss for material furnished and labor performed, etc., and changes are made in the contract by and between the contractor and the builder without the consent of the surety, while under the general rule such surety will be released as to any liability to the builder, he will not be released as to any liability to third parties who furnish material or labor under the special provision of the contract providing security for the payment of such material so furnished, when such changes

are made without their knowledge or consent. *Doll v. Crume*, 41 Neb. 655, 59 N. W. 806; *Kauffmann v. Cooper*, 46 Neb. 644, 65 N. W. 796. We are therefore of the opinion that the second contention made is not sustained by the authorities.

The court found that estimates were made by the architect, in compliance with the provision of the contract, so far as he was able so to do. The first estimate was made upon the representations of the contractor, and was in excess of the 90 per cent. provision of the contract, but the architect was deceived by the representations of the contractor. From the general findings of the court, it seems reasonably clear that this provision of the contract was substantially complied with. It is true the testimony shows that when the building was finished there was not ten per cent. on hand for the contractor, but this was on account of the fact that the officers of the school board, for their own protection as well as that of the sureties, were compelled to take charge of the building on account of the failure of the contractor to perform his duty and pay for the material and labor direct. No doubt had this not been done the sureties would have probably been liable for an amount greatly in excess of the amount of the judgment in this case. What we have said in disposing of the second contention made will equally apply to the third contention.

Going to the fourth proposition, it is contended that the bond secured no right of action to the plaintiff for the reason that under the law no lien could attach to the building. We are clearly of the opinion that this position is not tenable. Had the bond in question only provided for security of payment of claims secured by liens upon the building, then perhaps there would have been some merit in this contention,

for it seems to be conceded under the law that no lien could attach upon the building as security for the payment of the purchase price of material, labor, or otherwise; but this is not such a case. The bond in question, as we have seen, has a provision clearly contemplating security for the payment of claims such as that sued on in this action. Under this provision of the bond, quoted *supra*, security for the claim of the plaintiff was specially provided for, and the provision further contemplated that a right was given to proceed in the courts for the purpose of enforcing such security.

After a careful examination of the record, we find that no prejudicial error was committed affecting the substantial rights of the plaintiffs in error or causing a miscarriage of justice.

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.