IN RE ESTATE OF HARRIS R. WATKINS

May Term, 1944.

Reargued at January Term, 1945.

Present: MOULTON, C. J., SHERBURNE, BUTTLES, STURTEVANT
and JEFFORDS, JJ.

Opinion filed October 3, 1944.

Opinion on reargument filed February 6, 1945.

*Guy M. Page* and *Joseph T. Stearns* for the appellees.

*Lawrence & O'Brien* for the appellants.

JEFFORDS, J. After the opinion was handed down in the case of *In re Estate of Watkins,* 113 Vt 126, 30 A2d 305, holding that the Howard National Bank and Trust Company (hereinafter called the Bank) did not by virtue of its consolidation with the City Trust Company succeed the latter as executor of the Watkins estate, the Bank petitioned the probate court to be appointed administrator, d.b.n., c.t.a. of that estate. This petition was opposed by those entitled to take under the Watkins will, hereinafter called the beneficiaries, who asked for the appointment of the Rutland Trust Company, or some other suitable person, to that office.

A hearing was had before the probate court which found that the Bank was a suitable person within the meaning of the statute, P. L. 2784, and ordered that the Bank, upon filing a bond in a specified amount, be appointed such administrator. An appeal was taken by the beneficiaries to this order and a hearing was had in the Chittenden County Court. That court found that the Rutland Trust Company is a suitable person to administer the estate. It also stated in finding No. 25 that: "After careful deliberation and consideration of all the evidence, the objections and all the requests for findings, we find that the appellee (the Bank) is a suitable person to administer the estate and we are convinced and find that in justice and fairness the appellee is a more suitable person to administer the estate than the Rutland Trust Company." A judgment was entered affirming the order of the probate court and appointing the Bank administrator d.b.n., c.t.a. of the Watkins estate. The case is here on various exceptions taken by the beneficiaries.

The first matter for our consideration is the claim made by the Bank that no valid appeal was taken from the order of the probate court for that no bond was given as required by P. L. Sec. 3010 which reads as follows:

"Before an appeal is allowed the person appealing
shall give a satisfactory bond to the court, condi-
tioned that he will prosecute the appeal to effect and
pay the intervening damages and costs occasioned by
such appeal."

The Bank filed a motion in the county court to dismiss the ap-
peal on the ground that none of the persons appealing gave the
bond in question. This motion was denied. The Bank has filed no
bill of exceptions so the beneficiaries say that the ruling below has
become res adjudicata. The Bank claims the contrary and says as
this question involves a claim of lack of jurisdiction of the subject
matter it can properly be raised here in spite of the absence of a
bill of exceptions on its part. Passing over this claim of the bene-
ficiaries we will proceed to determine whether the bond as given
sufficiently complies with the statute.

The bond is in the amount of $250.00 and is signed and sealed
by Edwin W. Lawrence as principal and Harold I. O'Brien as
surety. It contained the condition that if the parties appealing,
naming them, shall prosecute the appeal to effect, and pay all inter-
vening damages and costs occasioned by the appeal, the obligation
of the bond to be void, otherwise to be and remain in full force.

The bond was apparently satisfactory to the probate court as
the judge signed the citation on appeal with the form of the same
altered somewhat and ordered the appeal be allowed and notice of
it given. This change in the form was made by inserting the words
"by their attorney" after the printed word "appellants" so it ap-
pears that the appellants by their attorney as principal have filed a
bond, etc.

The Bank claims that the word "give" appearing in P. L. 3010
must be taken to mean execute and deliver so it must follow that
the statute requires the person appealing to appear on the bond as
principal. No cases have been shown us nor have we found any
construing this statute on this point.

The statute in question first appears in the Acts of 1797 at page
24 where it is provided that the bond shall be in a reasonable sum
with sufficient sureties. It was changed by the Acts of 1821, p. 33,
Sec. 7 of ch. 7 by providing that an aggrieved person may appeal
from an order of the probate court on giving bond to the satisfac-
tion of that court. It is apparent that the Legislature intended by

this change to broaden the discretionary powers of a probate court in respect to its approval of the appeal bond. This provision respecting the satisfaction of the court as to the bond has been continued in the statute down to the present time.

It is clear that the purpose of the statute is to effectuate an absolute security to the other parties to be affected by the appeal. *Arnold* v. *Brooks Estate,* 35 Vt 204, 207. Construction of a statute which leads to absurd consequences must always be avoided if possible. *In re Swanton Market Area,* 112 Vt 285, 292, 23 A2d 536; *State Highway Board* v. *Gates,* 110 Vt 67, 72, 1 A2d 825. And so, also, where an adherence to the strict letter of the statute, or to the literal import of the words, would lead to injustice. *Brammal* v. *La Rose,* 105 Vt 345, 350, 165 A 916. The giving of a bond is a peremptory requirement of the statute and indispensable to the perfecting of an appeal. *In re Everett Estate,* 112 Vt 252, 254, 23 A2d 202; *Arnold* v. *Brooks, supra.* The bond must be filed within the 20 days allowed by P. L. 3005 for the taking of an appeal. *Lambert* v. *Merrill,* 56 Vt 464. In view of this necessity of filing a bond within 20 days after the decision of the probate court to be appealed from is handed down in order to perfect the appeal, it is apparent that the construction claimed by the Bank might lead to absurd and unjust consequences. It might well happen at the present time that a person who is a party in a case in a probate court is also in the armed forces of his country and has been ordered to foreign service, so it would be impossible to get the bond for appeal to him in time to execute and return it within the 20 day period. Or it might well be that a party during such period is so sick or disabled as to be unable to attend to such matters. It would be unreasonable to hold that the Legislature intended to penalize such persons by depriving them of their legal right of appeal because they were unable to execute an appeal bond.

Moreover, as we have seen, the purpose of this bond is to provide security for the adverse party. No other purpose is apparent. Thus the appellee cannot be harmed solely because some person other than the appellant appears on the bond as principal. The discretionary power given the court as to the bond is not limited by the terms of the statute except in respect to the obligee and the condition of the bond. If we give the construction to the statute claimed by the Bank it is apparent that the court must accept an appellant as principal on the bond regardless of whether that per-

son is satisfactory to the court from a financial standpoint. Under such construction the court would be forced to take as the only real security the obligation of the surety. This use of the word "satisfactory" in the statute, unrestricted except as above noted, indicates that the Legislature did not intend any such result and did not intend that in no case could the court accept a bond as satisfactory unless it was executed as principal by the person appealing.

We realize that when by statute a person is required "to give a bond" it may properly be said it was intended that such person execute and deliver the bond as principal. However, in P. L. 3010 there is not a mere requirement of the giving of a bond. It is there further provided that the bond shall be satisfactory to the court. We are convinced, for the reasons heretofore advanced, that the Legislature intended by this provision to use the word "give" in the statute as meaning "furnish". We believe it intended to place only such restrictions as are set forth in the statute on the judgment and discretion of the court in deciding whether a bond given or furnished by the person appealing is satisfactory. Consequently we hold that the bond in question, having been found satisfactory by the probate court, is not invalid because it was not executed and delivered by the persons appealing, or some of them, and that the bond sufficiently complies with the statute. *Clark* v. *Hennesey Bank*, 14 Okl 572, 79 P 217, 2 Ann Cas 219.

The beneficiaries claim that our cases relating to recognizances are decisive in their favor on the question now under discussion. They cite *Levin* v. *Peck*, 88 Vt 507, 93 A 256; *Cheney* v. *McLellan*, 43 Vt 157; *Chittenden* v. *Catlin*, 2 D. Ch. 22, and *Young* v. *Shaw*, 1 D. Ch. 224. For various reasons, which we need not go into, we do not believe they do control here. They are helpful, however, in that they disclose a tendency to give a liberal rather than a strict construction to statutes similar in purpose and in wording to P. L. 3010. These cases also show that when statutes have required that a certain person give security by way of recognizance we have held it was not necessary for the validity of the recognizance that such person join in the same.

The Bank urges many reasons in support of its claim of construction of the statute but none of them to our minds are convincing. It cites many of our statutes relating to probate bonds and says that in each the word "give" is used. It claims that these statutes indicate an intention on the part of the Legislature to require

the one who shall "give" the bond to appear on it as principal. No cases are cited construing these various statutes. In none of them is it provided that the bond be satisfactory to the court. They refer to situations different from the one to which P. L. 3010 applies. It follows that this claim is not at all persuasive. The Bank says that P. L. 3052 which relates to probate bonds generally limits the discretionary power of probate courts to the questions of amount of the bond and to the sureties. It says that in order to vest power in such courts over the selection of obligors on bonds the word "give" must be construed as meaning execute and deliver. If this claim has any merit in respect to other statutes relating to probate bonds, which we do not in any way decide, it has not, for the reasons heretofore indicated, any force in respect to P. L. 3010.

The Bank claims that certain of the forms used in probate courts and set forth in form books support its claim. But such forms are not controlling in the interpretation of this statute. See *In re Walker's Estate,* 112 Vt 148, 22 A2d 183, and *Russell* v. *Lund,* 114 Vt 16, 39 A2d 337.

The Bank relies much on *Leach* v. *Drake,* 15 Pick, Mass, 203, and *In re Dickinson,* 2 Mich 337. The statute under construction in the former case provided that a bond should be "given and filed" by the party appealing. In the latter case it was provided that a claimant before appealing should give a bond. In neither case was any discretionary power as to the obligor on the bond indicated as being invested in the court by the use, as here, of the word "satisfactory," or otherwise. Thus these cases are not in point.

The Bank also relies on *In re Everett Estate,* 112 Vt 252, 23 A2d 202. It claims we therein held, in effect, that an appeal and bond given under P. L. 3010 are defective unless the appellant is the principal obligor on the bond. The Bank misconstrues the holding in that case as no fact or issue was therein presented which required such a holding nor was any such made, directly, or indirectly, or in effect. We merely held that inasmuch as the defect in the record, upon which the motion to dismiss the appeal was predicated, was one which extrinsic evidence was required to establish there was error in granting the motion. The judgment was reversed and cause remanded.

We have now considered all of the contentions of the Bank relating to the question of jurisdiction which need be noticed.

P. L. 2784 which governs here reads as follows:

> "When an executor or administrator dies, resigns, is removed or his authority is extinguished, the remaining executor or administrator may execute the trust; and, if there is no other executor or administrator, administration may be granted to a suitable person."

After the hearing and before judgment was entered the beneficiaries filed requests for findings. Among such requests were several asking the court to find that there existed certain substantial bona fide claims in favor of the estate and against the Bank. The court was also requested to find that because of these claims the interests of the Bank are adverse to the estate. None of these requests were granted and exceptions to the refusals to so find were taken on the grounds that there was competent evidence fairly and reasonably tending to support the requested findings; that there was no evidence to the contrary and that these requested facts are material as they show adverse interests between the Bank and the estate and that the Bank is not a suitable person to be appointed to the office.

There was also a request to find that the Bank was not a suitable person to be appointed administrator d.b.n., c.t.a. of the estate. This request was not granted and exceptions were taken to the refusal to so find. These exceptions claim error as a matter of law and as an abuse of discretion.

The requests relating to the asserted adverse claims may be placed in two groups. The first has to do with claimed adverse interests arising from the fact that at the time of the consolidation the Bank assumed the liabilities of the City Trust Company. One request in this first group was to the effect that there is a substantial and bona fide claim in favor of the estate and against the Bank because the City Trust Company negligently retained in the estate certain stocks. A second request was to the effect that such a claim existed against the Trust Company for abandoning its duties as executor and wrongfully delivering the estate to the Bank. A request was also made to the effect that because of the two above asserted claims there is a claim in favor of the estate on the bond of the City Trust Company.

The second group of requests relates to asserted bona fide substantial adverse claims between the estate and the Bank growing out of the claimed fact that the Bank wrongfully took over and administered the estate as executor after the consolidation. These latter claims, as requested to be found, were in substance; for conversion because of alleged depreciation in the value of the estate during such administration; for money taken out of the capital of the estate in the amount of $11,653.00 and for the sum total of amounts of about $500.00 a year taken by the Bank for services during its claimed wrongful administration.

The beneficiaries state in their brief that the whole case is dependent on whether the facts relating to the claimed adverse interests are established by the evidence. They say that if these adverse interests did not exist there would have been no contest. They thus concede, in effect, that if the above requests were properly refused there should be no reversal. This question also seems to us to be the vital one in the case.

The evidence consists mainly of exhibits introduced by the Bank largely for the purpose of proving an estoppel. The court made no finding on this subject and the Bank now concedes that estoppel is not in the case but it does claim that the evidence introduced shows that it continued to act as executor in good faith under a mistake mutual to it and the beneficiaries. This documentary evidence consisted largely of correspondence between officials of the Bank and attorneys representing the beneficiaries and copies of various documents filed in the probate court relating to the administration of the estate. In substance this evidence discloses facts much the same as those appearing in the findings set forth on page 136 of 113 Vt. We will recite only so much of the evidence in the present case and of the findings as herein made as bear on the question of whether the court erred in refusing to grant the above noted requests. In reviewing the facts none will be stated unless uncontradicted or found by the court.

Harris R. Watkins died testate in February, 1930, and in March of that year the City Trust Company received its letters testamentary as executor of his will. He left an estate which consisted largely of stocks and bonds. The estate inventoried for a little over $500,000. On March 13, 1931, the Trust Company consolidated under the federal act with the Bank. On July 31, 1931, the Bank was appointed trustee of the trust fund established by

the will but the fund has never been decreed to it as such trustee.

When the first account of the City Trust company was filed in the probate court it did not contain any account for executor's fees. The probate judge in connection with the hearing in May, 1931, entered in pencil for the amount of such fees the sum of $11,-653.00. No order was ever entered by the court approving this account. On August 10, 1931, the Bank took out of capital of the estate $11,653.00, no part of which has ever been returned to the estate.

In January, 1933, a so-called "substituted supplemental first account" was filed by the Trust Company. A protracted hearing was held on this account which has never been completed. At this hearing the charge for services of the Trust Company above noted was contested and considerable evidence taken on that subject. At that same hearing the question of the liability of the Trust Company for the depreciation in value of certain stocks was the subject of much testimony.

From time to time after the consolidation for a period of about 10 years the Bank took money aggregating about $500.00 a year out of the estate and has never returned any part of it to the estate.

At the hearing in the trial court in the present case counsel for the beneficiaries stated several times the claims against the Bank above referred to. Counsel for both parties discussed at length various questions of law relating to the claims. The court inquired of counsel at times concerning matters relating thereto. Briefs on the law were filed by both sides. Much evidence was introduced bearing on the claimed negligence of the City Trust Company for retaining the stocks in question and some discussion by counsel of the law on this subject was had. After there had been an extended argument by counsel for both parties on various questions of law relating to the claims of the beneficiaries counsel for the latter stated to the court that it did not have to decide these questions, "because the real issue here, as we claim and we think the court will take that view of it when it reads the memorandum, is whether or not we have a substantial bona fide claim against the Howard Bank making a diversity of interests."

The claim of disqualification having been fairly and fully stated to the court, the question for us to decide is whether on the facts in the case the above noted requests should have been granted. If this question is answered in the affirmative the second question is

whether this failure to grant such requests requires a reversal of the order of appointment.

We will first determine whether the estate has claims against the Bank arising after the consolidation. The beneficiaries assert that the Bank from the date of the consolidation became an executor de son tort and therefore had no right to take the sum of $11,-653.00 and the further amount of about $5,000.00 heretofore mentioned. They also claim that as such executor the Bank must respond in damages for depreciation in the value of the assets of the estate between the date of the consolidation and the time when it was appointed special administrator of the estate, October 22, 1942. As shown in our former opinion, 113 Vt at page 130, 30 A2d 305, and by the evidence. in the present case, the Bank after the consolidation acted as executor. It thus became an intermeddler and an executor de son tort of the estate. The beneficiaries claim that its liability as such dates from March 12, 1931, the date of the consolidation while the Bank says, in effect, that if it became such executor it was not before April 1, 1932, when its charter was forfeited for non payment of its license tax. Each side insists that our former opinion holds in its favor as to this time contention. That point was not in issue in the former case and thus no finding or holding was made as to it. In the present case no finding on this question is made. It would seem that it presents a mixed question of law and fact and must be determined, if at all, when put in issue.

■■■ But, as before stated, the Bank became an executor de son tort·of the estate and at a date not later than April 1, 1932. Certainly from that time on it had no right to actively function as executor of the estate as the evidence discloses it did. After that date the fact that the City Trust Company was a component part of the consolidated bank could give the Bank no right to so function. P. L. 5867. The common law doctrine that one who intermeddles with the affairs of an estate becomes its executor de son tort prevails in this state. *Walton* v. *Hall,* 66 Vt 455, 463, 29A, 803. The Bank relies on *Blodgett* v. *Converse,* 60 Vt 410, 15A 109, in support of its claim that as it acted in good faith it did not become an executor de son tort. The facts in that case are entirely different from those here. Thus the Blodgett case is no authority for a holding here that the Bank did not become an executor de son tort. The situation in the present case is like that in *Ex Parte*

*Worcester County National Bank,* 279 US 347, 49 S Ct 368, 73 L ed 733, 61 ALR 987. In that case, under the authority of the Massachusetts cases therein cited, it was held that when a bank improperly assumed it was made an executor by the mere consolidation under the federal act with another bank, the latter having been the legal executor of an estate, and, acting under this assumption, the consolidated bank continued to act as such executor it became an executor de son tort of the estate. In the Worcester Bank case and in the Commonwealth-Atlantic National Bank cases therein referred to, as far as it appears, the banks in question acted in good faith.

The Bank says that one who has become an executor de son tort is not thereby disqualified from appointment as administrator of the estate. It cites cases and text book authorities in support of this claim. It is true that cases may be found which hold that the fact that one has become an executor de son tort of an estate does not per se destroy that person's right to be named administrator of the same. Intimations to that effect appear in our own cases. See *Shaw* v. *Hallihan,* 46 Vt 389, 394, 14 Am Rep 628. It should be noted, however, that in the Worcester Bank case, supra, it is suggested that the bank could not properly apply for appointment as executor until it had secured its release de son tort. But it is not necessary to decide this point. It is sufficient to say that under our probate practice the fact that one has intermeddled with the affairs of an estate presents no reason for such person's appointment as administrator of the estate.

The beneficiaries do not assert a disqualification because the Bank has become an executor de son tort of the estate. They say that the disqualification comes from the fact that because of the intermeddling certain substantial claims have arisen in favor of the estate and against the Bank. The Bank asserts that as the evidence shows it acted in good faith and under a mutual mistake it would be unfair and inequitable to subject it to liability for claims against it as an executor de son tort. The trouble with this position is that the law places the same responsibility for his acts upon an innocent as upon an intentional intermeddler. If one has made himself an executor de son tort he has subjected himself to the liabilities thereby accruing regardless of how innocent or mistaken he was in the matter.

The above principle is well set forth by the late Chief Justice

Rugg in *Claburn* v. *Phillips*, 245 Mass 47, 139 NE 498, 500. This was an action by an administrator against those who had become executors de son tort of the estate. The defendants asserted a right of recoupment which was denied. In the course of the opinion it is said:

> "The argument of injustice under all the circumstances of requiring the defendants to pay the full value of the property taken by them is urged strongly in their behalf. Every rule of law is likely at some time to appear to work an injustice or to be harsh in its application. The rule here invoked by the plaintiff is a sound one. Observance of the ample provisions made by law for the orderly settlement of the estates of deceased persons with equal regard for the rights of all having an interest in it is essential for the well being of society. Conformity to those provisions would have relieved the defendants of all difficulty. Courts cannot abandon a plain rule of law at will in order to accomplish what some might think a closer approach to the ideal in a particular case. Caprice would then be substituted for law. Different judges might entertain different views. *'Quot judices tot sententiae'*. Certainty would cease."

The statements of Mr. Justice Rutledge on this matter appearing in *Burke* v. *Canfield,* 121 F2d 877, 880, are also much in point. In the course of the opinion in that case it is stated:

> "The case therefore is one not colored by any element of fraud or intentional misconduct. If there has been intermeddling it has been innocent, due to ignorance concerning legal rights and powers rather than design to do wrong. But innocence of motive cannot entirely absolve one who oversteps the boundaries prescribed by law for dealing with a decedent's estate, and if that has occurred here the responsibility for it must be accepted by those who have crossed the line, however unintentionally." . . . "The temptations to intermeddle with decedent's estates are so great that relaxation of the lawful and normal procedure for dealing with it in the course of administra-

tion would make it difficult to draw the line between innocent but mistaken intermeddlers and consciously guilty ones. Proper general administration of the probate laws requires that in matters of this character the bars not be let down and that persons take the risk of their innocent mistakes as well as of their intentional interferences in dealing with the property of the estate."

Also see *Bailey* v. *Bailey*, 67 Vt 494, 498, 32 A 470, 48 Am St Rep 826.

From what we have said it is apparent that the estate has claims relating to the aforesaid sums taken by the Bank based on the ground that when so taken the Bank was an executor de son tort of the estate. In respect to the claim that the Bank is liable in conversion for the amount of the claimed depreciation in the value of the assets of the estate during the period when it acted as executor de son tort both parties cite much law. They also argue what they claim the evidence discloses on this matter. It is apparent from what they say that the amount of depreciation, if any, is dependent largely on the date when the Bank became such executor. As we have seen, this fact has never been determined and cannot properly be at this time by us. However, it is clear from the record that the beneficiaries did at the hearing and now do make this claim for damages resulting from such claimed conversion.

▮▮▮▮▮▮ An administrator is a technical trustee. *In re Walker's Estate*, 100 Vt 366, 370, 137 A 321. It is clear that the beneficiaries have the right to have a person appointed to this office of trust who will administer it fairly and impartially. They have the right to demand that no person be appointed whose personal interests are so conflicting with and adverse to the interests of the estate that both such interests cannot fairly be represented by the same person. This rule in principle, though possibly not stated in the exact language here used, is to be found in the following cases: *Re Elder*, 160 Ore 111, 83 P2d 477, 119 ALR 802; *Corey* v. *Corey*, 120 Minn 304, 139 NW 509; Putney v. Fletcher, 148 Mass 247, 19 NE 370; *Thayer* v. *Homer*, 11 Met 104; *Anderson* v. *Bean*, 272 Mass 432, 172 NE 647, 72 ALR 959; *Comstock* v. *Bowles*, 295 Mass 250, 3 NE 2d 817; *Farnsworth* v. *Hatch*, 47 Utah 62,

151 P 537; *Heron's Estate*, 6 Phil 87; *Pickering* v. *Pendexter*, 46 NH 69; *In re Lininger's Estate*, 230 Ia 201, 297 NW 310; *In re McCluskey*, 116 Me 212, 100 A 977; *Justice* v. *Wilkins*, 251 Ill 13, 95 NE 1025; *In re Schmidt's Estate*, 183 Pa 129, 38 A 464; *In re Wallace*, 74 NYS 33; *In re Gleason's Estate*, 41 NYS 418. Also see Woerner's, The American Law of Administration, 3rd ed sec. 235 and 33 CJS p. 950. The rule is recognized in our own cases. See *Odlin* v. *Nichols*, 81 Vt 219, 222, 69 A 644, and *Riley* v. *McInlear's Estate*, 61 Vt 254, 261, 17 A 729, 732, 19 A 996. In the latter case it is said: "The executor or administrator is the general representative of the estate, and his duty is to act for it. Like any other agent, he cannot act in its behalf when his personal interest comes in antagonism with his official duty."

In the present case the various claims which the beneficiaries assert the estate has against the Bank are substantial as they aggregate many thousands of dollars. It is also apparent that they are bona fide and real for it cannot be said that the claims are sham, specious, or wholly unfounded. The vigorous manner in which those claims, or matters relating thereto, have been contested by the Bank indicates that they are not altogether without foundation. It is not necessary that the beneficiaries show in this proceeding that the estate will ultimately prevail on the claims for that question is not properly determinable at this time. *Corey* v. *Corey*, 120 Minn 304, 119 NW 509; *Re Elder*, 160 Ore 111, 83 P2d 477, 119 ALR 802. In the Corey case which involved a petition to remove an executor for unsuitableness it is said:

"Moreover, at least where, as is the case here, no suggestion is made of the assertion of a sham claim in favor of the estate, it is necessary for the petitioner to establish only what has been done, namely, that there is a real and substantial controversy. To hold that the petitioner must establish the claim which he seeks to have enforced by the representative would make his rights depend, not upon the fact of their existence but upon his ability to establish them in a collateral proceeding. The futility of such a rule is apparent when we consider that the determination so made would not establish a personal liability on the part of any one, and would adjudicate no property

right, but merely constitute a finding of facts as a foundation for the removal of the representative. It would compel the petitioner to expose his entire case to his adversary in a matter essentially preliminary."

In view of the above rule we take occasion at this time to state that nothing we have said in this opinion should be taken as indicating one way or the other whether the estate should prevail in the claims, if they are litigated, or whether they have sufficient substance to take the cases to the jury if they be tried by jury. This statement applies particularly to the claim against the Bank on account of the alleged negligence of the City Trust Company. Many cases are cited in the briefs of both parties bearing on the question of this claimed liability but, for the reasons stated, we have had no occasion to pass on the validity of that claim.

The facts of the case show that the claims which the beneficiaries assert the estate has are real, substantial and adverse to the interests of the Bank. Under the law they have the right to have a person appointed administrator of the estate who will fairly and impartially determine whether these claims should be compromised, litigated, or abandoned. Any person other than such would be unsuitable for the appointment within the meaning of P. L. 2784. It is apparent that the adverse and conflicting interests between the Bank and the estate in respect to these claims would make it extremely difficult and virtually impossible, for the Bank to act impartially in the matter, for, as stated in *Farnsworth* v. *Hatch,* 47 Utah 62, 151 P 537, 541. "In the nature of things it is not possible for any one to act with perfect impartiality and fairness in a matter in which he claims valuable and important interests." It follows from what we have said that the before noted requests of the beneficiaries should have been granted and that the refusal to grant constitutes error.

The Bank asserts that P. L. 2784 confers discretionary power upon the court in determining whether a person is suitable for the appointment. This is doubtless so. But if the requests in question had been granted it is apparent that the court in this case should and would have entered judgment dismissing the Bank's petition, for no power which the court possesses under the statute, discretionary or otherwise, would have permitted any different action on its part.

In arriving at our decision we have carefully considered all of the reasons advanced by the Bank in support of the order of appointment and the ultimate finding upon which it is based. Some of these contentions have been disposed of by what we have already said but it may be well to refer directly to others and briefly discuss them. The Bank does not deny the rule of disqualification by adverse interest heretofore set forth but it says that the facts in the present case do not bring it within the rule. It claims that the cases upon which the beneficiaries rely which appear largely in the annotation in 119 ALR commencing at page 306 disclose only a disqualification for appointment of an administrator, or a cause for the removal of such as being unsuitable, in situations limited for the most part to claims by the administrator, or would be administrator, to some specific property also claimed by the estate. The Bank says that in general the cases of adverse interests showing disqualification are those which involve either bad faith or necessity of litigation outside of the probate court. Our study of many cases on this subject convinces us that the application of the rule is not confined to such adverse claims as the Bank contends. We believe the rule applies to all cases where, as here, the adverse claims are so large as to make it appear impossible for both interests to be fairly represented by the same person. Certainly no language in any of the cases or text books which have come to our attention bear out the Bank's contentions. For instance, in *Putney* v. *Fletcher,* 148 Mass 247, 19 NE 370, a case much cited on this subject, it is said, "An executor or administrator is deemed unsuitable when he has any conflicting personal interest which prevents him from doing his official duty."

The Bank also says that one is not disqualified for appointment as administrator because of his personal indebtedness to the estate. It cites *Probate Court* v. *Merriam,* 8 Vt 234, and *Lyon* v. *Osgood,* 58 Vt 707, 7 A 5 in support of this statement. It is sufficient to say in respect to these cases that they are not in point as the question of ineligibility for appointment because of indebtedness to the estate was not in issue in either case nor touched upon in the opinions. It should be noted that in other jurisdictions where it has been claimed that personal indebtedness to the estate on the part of an administrator or executor establishes a sufficient adverse interest to justify his removal there is a disagreement on the answer. The few cases which hold that such indebtedness is not sufficient are

not persuasive here as the facts in the present case are entirely different from those in such other cases.

The Bank strongly contends that its appointment would relate back to the death of the decedent so that its duty to account would cover all its acts from the time the estate came into its custody, whether such acts were committed before or after the appointment. It cites many cases in support of this contention. It urged below and does here that all of the asserted claims against it could be settled in an accounting with full rights under the statutes, P. L. 2820 and 2821, to the beneficiaries to be heard in the matter. It says that in such proceeding it could be surcharged for any amount due it to the estate. The Bank admits there would be a conflict of interest under such procedure between it and the estate but it says that is a conflict which in the nature of things arises upon any accounting by an administrator. It cites *Odlin* v. *Nichols,* 81 Vt 219, 69 A 644, in support of the contention that the rule of relation back and the duty to account resulting therefrom shows here a lack of disqualifying interests. That case was a petition to remove executors. The petition was denied and this denial was affirmed. The Bank relies on the following statement appearing in the opinion on page 222 of 81 Vt: "When this competency is challenged on the score of interest, the question is to be considered with reference to the situation of the estate at the time. If his interest (executor's) will not conflict with the duties still to be performed there is no occasion for removal." The Bank argues that as under an accounting there would be no more than the usual conflict incident to any accounting it must follow that the Bank is not disqualified because of adverse interests as it has no interest which will conflict with its duties still to be performed. This argument is unsound and nothing can be drawn from the quoted statement in the Odlin case, or from the case generally to support it. In that case the matter which might have jeopardized the rights of the petitioner, thus causing a conflict of interest between the executors and a beneficiary, had been disposed of. The Court impliedly recognizes that if this were not so, cause for removal might be shown. In the present case, as in all similar cases, the person appointed administrator has the duty of fairly and impartially administering his trust. He is charged with the duty in like manner of determining what course to follow in respect to claims which the estate has against any person. The interests of the Bank adverse

to those of the estate in regard to the claims in question would, as we have seen, make it virtually impossible for the Bank to act impartially in deciding what course to follow in respect to these claims. It follows that the interest of the Bank would conflict with its duties still to be performed as administrator of the estate. It is no answer to say, as the Bank does, that the rights of the beneficiaries are fully protected under P. L. 2820 and 2821. These rights are secondary to their primary rights of having a fair and impartial person appointed administrator. It is true that the Bank would have no control over the beneficiaries in respect to their rights under these statutes but the necessity of invoking these statutory rights should not be imposed on the beneficiaries by an appointment which would clearly call for their invocation.

Nor are we impressed by the argument generally that because the claims may all be disposed of in the orderly and simple procedure of an accounting the Bank should be appointed. It is true it often happens that disputes arise between an administrator and those interested in the estate over the former's account. But if because of matters in which there is a conflict of interests, the probate court could have foreseen that such disputes would arise involving substantial amounts if a certain person were appointed, the court could not properly have appointed such person. Here the situation is known. The claims will be just as real, just as substantial, just as adverse, whether contested in an accounting or litigated in a court of common law. In short, the fact that these claims might possibly all be disposed of in an accounting affords no reason for the appointment in this case.

From what we have said it is apparent the judgment must be reversed unless there is some reason why the general rule of disqualification because of adverse interests does not here apply. The Bank says that it is the law of the case that on April 1, 1932, it was eligible for the appointment and is not disqualified by any subsequent events. In support of this claim the Bank relies on a statement appearing in our former opinion, 113 Vt at page 138, as follows: "The (probate) court might, after dissolution of the City Trust Company's charter, have appointed the petitionee (Bank) administrator with the will annexed, for a national bank may serve in this capacity."

It is obvious that the Bank misconstrues the effect of this statement. In that case no question of the eligibility of the Bank for

such appointment was in issue. We merely observed generally that national banks may serve as such administrators and, consequently, the court might appoint, i. e. had the power to appoint, the Bank to that office. The quoted statement was entirely abstract and has no bearing on the issue in the present case.

Pending the appeal in the former case the Bank applied for appointment as special administrator of the estate and, as before noted, was so appointed on October 22, 1942. This appointment was made upon findings favorable to the Bank in that they indicated that the Bank was qualified to hold such office. The Bank now claims, in effect, that this appointment is *res adjudicata* that, when appointed, the Bank was eligible to carry out the duties of special administrator which, says the Bank, are substantially the same duties concerning which the beneficiaries claim a conflict of interests. The Bank then argues it must follow that if it is disqualified to serve as administrator d. b. n., c. t. a., the disqualification must result from events since October 22, 1942. It says no such events here appear.

The statutes relating to the appointment of special administrators appear as secs. 2796-2800 of the Public Laws. It is not necessary to discuss these sections nor the cases relating to special and general administrators to demonstrate that there is no merit to this claim of the Bank. It is sufficient to say it is apparent from the statutes that the appointment of a special administrator is a temporary one made necessary as a matter of expediency. By P. L. 2796 no appeal is allowed from the appointment. This last provision alone should be enough to show that the fact of an appointment as special administrator can have no proper bearing on the question of whether such appointee is a suitable person for appointment as administrator d. b. n., c. t. a. under P. L. 2784.

The findings show that the Bank is well qualified generally to administer estates the size of the one here. But the question of whether a person is suitable for appointment as administrator of an estate must be determined in the light of the facts and circumstances bearing upon his suitableness for appointment in respect to that particular estate. *In re Davis*, 237 Mass 47, 129 NE 366; *Emsley* v. *Young*, 19 RI 65, 31 A 692.

The Bank lays much stress upon one statement in the ultimate finding No. 25, "that in justice and fairness the appellee is a more suitable person to administer the estate than the Rutland Trust

Company". The sole question for the court to determine on the Bank's petition was whether the Bank was a suitable person for the appointment within the meaning of the statute under the facts and circumstances bearing on the Bank's situation or relation to the estate. If the facts disclosed suitability, the statute conferred the right of appointment. If, however, the facts disclosed unsuitability, the court had no power under the statute to make the appointment for any reason. The matter was ended.

No reason having been found for affirmance of the judgment it must be reversed and judgment entered dismissing the petition of the Bank for the appointment.

The beneficiaries took no exceptions to the refusal of the court to appoint the Rutland Trust Company administrator of the estate.

*Judgment reversed, petition of the Howard National Bank and Trust Company to be appointed administrator d. b. n., c. t. a. of the estate of Harris R. Watkins dismissed with costs and to be certified to the probate court.*

## ON REARGUMENT.

JEFFORDS, J. After the foregoing opinion was handed down the Bank, by leave of the Court, moved for a reargument. Several grounds for the granting of the motion were stated therein which were briefed and argued. The result was that reargument was granted on the grounds set forth in the motion.

The first ground relates to the procedure we adopted in coming to the vital questions to be determined in the case. The Bank cites several cases holding that we cannot supplement the findings, though the evidence may be before us. (See *Tuttle* v. *Tuttle,* 112 Vt 271, 279, 23 A2d 523.) It says that by our method of treatment of the refused requests of the beneficiaries, heretofore referred to, we have violated this rule. But the cases cited by the Bank are not in point as none of them involved requests for findings which had been refused. The Bank says that at the most we could only properly reverse and order a new trial for any error in respect to the refusals to find.

In the present case we have followed no different procedure from that used in the past in dealing with exceptions to refusals to find. We have searched the record and have concluded that upon the uncontradicted evidence, and certain of the findings unexcepted to, the requests in question should have been granted

and the refusal to comply with them was error. Unless some reason, not here appearing, should call merely for a remand, it would be useless and senseless to send the case back with instructions to the county court to find the requests which had been refused and enter a judgment in accordance with the findings as then made. Consequently we will enter the final judgment demanded by the requested findings. *Nelson* v. *Bacon,* 113 Vt 161, 32 A2d 140, is full authority for this procedure.

The second ground attacks the statement in the opinion to the effect that the exact time when the Bank started to act as executor de son tort has not as yet been determined. The Bank says that by the decree of the probate court and the opinion in 113 Vt 126, affirming the decree, it is established that the City Trust Company, as a constituent in the consolidated corporation continued in existence until April 1, 1932, with its corporate identity preserved. The Bank then claims, for the reasons hereinafter set forth, that it follows that its acts from the date of the consolidation until April 1, 1932, were the acts of the City Trust Company as lawful executor.

In finding No. 1 in the present case certain facts were found by reference to those found in the prior case. Among such were the following appearing in 113 Vt at page 130:

> "On or about the date of the consolidation the petitionee (Bank) took possession and control of the assets of the estate and proceeded to act as executor. . . . After March 12, 1931, the directors of the City Trust Company never took action as a board and the affairs previously conducted by the company were directed and controlled by the directors and officers of the petitionee."

The claims of the Bank on this subject are as follows: That because the City Trust Company continued in existence until April 1, 1932, it might be inferred from the above quoted facts that the acts of the Bank during the time in question might be deemed, in legal effect, the acts of the continuing constituent corporation, through the corporate machinery of the consolidated corporation, or of the consolidated corporation as the agent of the continuing executor.

In support of its first alternative position the Bank relies on

*University of Vermont* v. *Wilbur's Estate,* 105 Vt 147, 163 A 572, as authority for the proposition "that the directors of a consolidated corporation are authorized (in the absence of a controlling expression in the charter or the contract of consolidation) to act for and on behalf of a continuing constituent corporation."

One answer to this claim is that the legislative enactments under which the Vermont Agricultural College and the University of Vermont were united under the name of University of Vermont and State Agricultural College with both corporations continuing their existence (see *Jones* v. *Vt. Asbestos Co.,* 108 Vt 79, 85, 182 A 291) were different in their provisions from those of the act under which the present consolidation was effected. 113 Vt at p. 131. In its consolidation the University of Vermont was kept alive while the City Trust Company after the consolidation, though not legally dead, remained in a condition of suspended animation only, until April 1, 1932. 113 Vt at p. 135.

But there is another and conclusive answer to the first alternative position of the Bank above referred to. The findings show that the Bank after the consolidation acted as executor. In support of its position the Bank's claim apparently is, and it seems must be, that by virtue of the consolidation the consolidated bank through its board of directors had the right to act as executor as "the *alter ego* of the City Trust Company", until April 1, 1932. But this is not so. The Bank may have acquired certain rights of the City Trust Company by virtue of the consolidation but among such was not that of acting as executor of this estate even for a single day. This was the effect of the holding in the former opinion. To sustain the Bank's position would be contrary to that holding.

In support of its second alternative position, i. e. that if the acts of executorship were done by the Bank as a separate entity it might be inferred that the Bank at the time was acting as agent of the City Trust Company, the Bank relies on *Clark* v. *Peck's Ex'rs.,* 79 Vt 275, 65 A 14. But that case is not in point here. There it was clearly alleged as a fact that the executors had permitted Peck to control and manage the estate and what is said in the opinion as to Peck's rights to the possession of the estate is predicated on that fact.

In the present case the above quoted findings clearly show that the Bank took possession and control of the assets of the estate

and proceeded to act as executor, as principal. Their wording leaves no room for an inference that it so acted as agent of the Trust Company.

We see no reason to change the position which we have taken as to the time element of the executorship *de son tort*.

The next ground of the motion goes to the very heart of the opinion. It is, in substance, that in holding that the rule of disqualification because of adverse interests applies here, we have either misconstrued or misapplied the law on the subject as laid down in all the cases. Many reasons are advanced in support of this ground and we will treat only those which we deem worthy of consideration.

The Bank says that none of the cases in the fairly extensive list cited in the opinion as supporting the rule as there stated are here in point. The Bank divides these cases into four classes and says that the facts and circumstances of the present case do not bring it within any of these classes. It claims that the rules dealing with "these four categories are not relevant here because all the adverse interest is with respect to the probate accounting, no initial decision by the administrator is necessary to the protection of the estate and there is no evidence of refusal to act or of fraud." The Bank then cites many cases which it says show that in the absence of fraud, disqualification to act as administrator does not result from interest adverse to the estate, in connection with, and justiciable in the probate accounting.

These claims do not differ in substance from those advanced by the Bank in its original argument and briefs. They were then carefully considered and thoroughly investigated. Further thought and study since the hearing on the motion only convinces us that we are right in the position we have taken in respect to these claims. True it is that no case we have cited is similar on its facts and circumstances to the present case. On the other hand the Bank has shown us no case, nor have we found one, having facts and circumstances like those in the case at hand with holdings different from those we have herein made. Neither, as before stated, have we found any case or text book which indicates that the rule is so limited in its application as claimed by the Bank. Our study of the cases convinces us, as we have heretofore indicated, that when the facts and circumstances in a particular case clearly show that a certain person because of adverse interests cannot impartially

carry out the duties of a trust he either is removed from office, or his petition for appointment is denied by the lower court, as the case may be, and if such action is not taken the order of that court is reversed on appeal as being an abuse of discretion.

Practically all of the cases cited by the Bank as holding that disqualification does not exist when all the disputes may be settled in an accounting are those of removals. It would unduly prolong this opinion to discuss these cases. We had read most if not all of them before writing the original opinion. It seems that there is a clear distinction to be observed in applying the rule in the case of a removal and one of appointment. In the former case it may well be that the asserted adverse interest is of such a nature that it would seem in the sound discretion of the court to be unduly harsh or unnecessary to remove the administrator. The court might very well conclude that the matter could be disposed of in the accounting with full protection to the estate. These reasons for denying the petition for removal are to be found in some of the cases cited by the Bank on this point. We can only conjecture as to the position the courts would have taken in these cases if they had been ones for appointment and it was known at the time that the matters in dispute existed and would be made the subject of litigation. It is apparent, however, that certain reasons for the exercising of discretion in one case do not exist in the other. Thus it would seem that a petition for removal could properly be denied in a case, while if the same facts which formed the basis for that petition on the ground of adverse interests were known to the court on a petition for an appointment, there might be an abuse of discretion if the appointment were made.

All of the cases cited by the Bank can be distinguished for the reasons already stated, or for other reasons, with the possible exception of *Succession of Weiss,* 43 La Ann 475, 9 S 95. In that case the facts are entirely different from those here but if the rule there applied differs from our holdings in the present case it is sufficient to say that we are not disposed to follow it.

But our search of the cases leads to the conclusion that it has heretofore been recognized, if not expressly held, that the rule does apply to cases where the matters creating the disqualification could be disposed of in an accounting. See *Stearns* v. *Fiske,* Mass, 18 Pick. 24; *In re Schmidt's Est.,* 183 Pa 129, 38 A 464; *Burke* v. *Canfield,* 121 F2d 877.

The Bank says, in the absence of fraud, mere claims against one seeking appointment as administrator, which can be determined in an accounting, do not disqualify. It says that Corey v. Corey and Re Elder cited by us in the opinion in support of our holding that it is not necessary for the beneficiaries to show in this proceeding that the estate will ultimately prevail on the claims are not authorities for this holding. The Bank advances many reasons in support of its claim on this point none of which appeal to us. We do not believe that in either of the above cases was it intended to restrict the rule as therein stated to the particular facts or circumstances of that case. This is no more a proper proceeding in which to try the question of the validity of claims which may be disposed of in an accounting than it would be if the claims were to be litigated in a court of common law or equity. In addition to the Corey and Elder cases see *Davis* v. *Roberts,* 206 Mo App 125, 226 SW 662 and *Re Mills,* 22 Or 210, 29 P 443.

The Bank states in its brief: "It is not contended that appellants have done more than offer evidence showing bona fide claims; they do not attempt to establish the fact of liability. They did not ask for a finding of liability." In addition to what we have said generally on this subject, it should be noted that the probate court, or the county court sitting as a higher court of probate, had no jurisdiction to hear and determine the claims based on the executorship de son tort. *Bailey* v. *Bailey,* 67 Vt 494, 500, 501, 32 A 470, 48 Am St Rep 826.

The Bank cites many cases which it says support its claim that in circumstances like the present mere bona fide claims are not sufficient to establish disqualification. Most if not all of these cases are for removals and the holdings turned not on the fact that a mere claim was made but on the nature of that claim. The only case so cited which would appear to support the Bank on this point is that of *Jones* v. *Harbaugh,* 93 Md 269, 48 A 827. But the facts in that case fully warranted the court in holding that there should be no removal until it had been determined that the money retained by the administrator was improperly held by him.

The Bank again strongly urges that indebtedness to an estate does not disqualify one from serving as its administrator as this is a matter for accounting. Lest there be any misunderstanding, we have not held and do not hold that mere indebtedness disqualifies. But here we do not have a case of "simple indebtedness"

as claimed by the Bank. In respect to the larger claims, at least, the Bank strongly contends it is not liable. It is the sharp dispute as to a relationship of debtor and creditor between the Bank and the estate and not that relationship itself that here brings about the diversity of interests and disqualifications. See *Latham* v. *Mullen,* 37 RI 297, 92 A 804. Our position on this subject is indicated by what we have heretofore said. It is now stated in such a way as to leave no doubt in the matter.

The Bank relies heavily on *Winship* v. *Bass,* 12 Mass 199, in support of its claim that indebtedness does not disqualify. But that case is not here in point. There Winship was removed as an executor of an estate as being unsuitable for the reason, apparently, that he resisted the payment of a debt due from him to the testator. The only ground for the contest, however, was the claim that by his appointment as executor the debt was discharged. The latter question was the main and really the only point in issue, for being determined against Winship, the decree of the probate court was by consent reversed and the cause remanded. The court in the course of the opinion notes that in cases where a suit in some court other than the probate court would be necessary to enforce the claim the determination to resist its payment might be cause for removal. It says that it may not always be necessary to take this step and that such necessity does not appear in the present case as Winship had given a bond and "the interest of the estate may require that such security should be preserved by continuing the executor in office, rather than those entitled under the will should be deprived thereof, by discharging the trust, and of course cancelling the bond." This case illustrates the point we have heretofore made that reasons exist for denying petitions for removal which do not apply in cases involving petitions for appointment.

The Bank now says in view of our holding that it acted as executor de son tort it is not entitled to the fees taken during that time so it will charge itself with the sum of $5,000.00, with interest, in its account as special administrator. This admission doubtless ends any dispute as to that claim but it seems to be the smallest among those relied upon by the beneficiaries and its elimination cannot affect the positions which we have taken in this case.

The Bank criticizes one sentence in the opinion which indicates doubt as to whether claims against the Bank as executor de son tort could be determined in other than a common law court. The

Bank says that if it is appointed administrator all such claims can be disposed of in its accounting so that the rule of law indicated in the sentence in question only applies to such an executor who has not subsequently been appointed the lawful administrator of the estate. This sentence is not necessary to any of our holdings. Consequently to avoid any question concerning it we have eliminated this and two other sentences based somewhat on the sentence with which fault is found.

We close our discussion of this third ground of the motion with a quotation from the opinion in *Heron's Est.*, 6 Phila 87, 89, which is as follows:

> "There is no principle I conceive better settled than that which prohibits the appointment as administrator of a person whose interests are adverse to those of the estate he would be called upon to administer. It is against the policy of the law to appoint next of kin so situated, and, of course what would prevail against the application of the next of kin would with greater force apply to a stranger to the blood."

Finally the Bank says that by the decision in this case we have outlawed fairness and justice. This is a serious accusation which requires a full examination and a complete answer.

The basis of this statement seems to be that we have refused to consider the right of courts with equity powers to remedy the effects of a mutual mistake of law and place the parties in the position which they would have been in had the mistake not occurred. This claim was urged in the Bank's original brief and not directly answered in the opinion as we felt it was covered by our statement, supported by authorities, "If one has made himself an executor de son tort he has subjected himself to the liabilities thereby accruing regardless of how innocent or mistaken he was in the matter." But in order to remove any doubt we will treat the subject further.

The Bank says if it is made to respond in damages on the claim for depreciation in the value of securities while it acted as executor de son tort, or on any other claims which it says might be made against it, and having for their bases only the fact of such executorship, the estate would be unjustly enriched. It urges that such enrichment would be unfair and unjust and it cites cases from

other jurisdictions which it claims support its position that a court of chancery will grant relief under such circumstances from a mutual mistake of law.

There is no finding that the Bank acted as executor under a mutual mistake of law. But assuming this to be so, none of the cases above referred to on which the Bank relies on this point have granted relief from such a mistake in a situation such as the one here presented.

■■ Under our own decisions equity will not relieve from a mistake which is wholly one of law. *Freeman* v. *Holt,* 51 Vt 538, 542; *McDaniels* v. *Bank of Rutland,* 29 Vt 230, 239, 70 Am Dec 406. No special circumstances indicated in the latter case as possibly calling for a relaxation of the rule are here apparent. The probate court and the county court sitting as a higher court of probate possess only a portion of equitable powers. *Spaulding* v. *Warner,* 52 Vt 29, 32. Their equitable powers do not extend to matters peculiarly within the jurisdiction of equity. *Bailey* v. *Bailey,* 67 Vt 494, 501, 32 A 470, 48 Am St Rep 826. Thus in any view of the matter, neither the probate court nor the county court had power to grant relief in this case on the ground of a mutual mistake of law.

But this discussion of the power of the probate or county court to relieve the Bank from its claimed mutual mistake of law has no real bearing on the decision in the case. We are not here concerned with a suit in equity with that point in issue. The question in this case is whether the Bank is a suitable person for the appointment. As applied to that question the Bank's position must be taken to be this: That when a person has intermeddled with the affairs of an estate through a mutual mistake of law and as a consequence has incurred certain liabilities, these facts present a reason why he should be appointed the legal administrator of that estate, for by the appointment he would be relieved from some or all of these liabilities. The Bank says, in effect, that not to grant this relief would be unfair and unjust.

As applied to the present case this would be the result if the Bank's position were upheld. By its appointment, under the doctrine of relationship back, all of the acts of the Bank while it was executor de son tort which would have been valid had it been the lawful administrator would be legalized and made valid. Woerner, supra., sec. 196. It is apparent that the receipt of the assets of the

estate would have been a valid act. It follows that by the application of the doctrine of relationship back the claim of the beneficiaries against the Bank for depreciation in value of securities during the time it acted as executor de son tort, and grounded as to liability only on that fact, would be extinguished. The Bank admits this to be so.

As before stated, the Bank lays much stress on the statement in finding number 25 relating to fairness and justice. It should be noted the finding is "that in justice and fairness the appellee is a more suitable person to administer the estate than the Rutland Trust Company." Comparison with another is not a proper test for suitability. *In re Morgan's Est.*, 209 Mich 65, 176 NW 606. But in no aspect of the case can the judgment of the court be sustained on this ground of fairness and justice.

The Bank urges many times the claim that because one has become an executor de son tort he is not thereby disqualified from appointment as administrator of the estate. We have heretofore stated, for the reasons given, that it is not necessary to pass on that claim in this case. The persistence with which it is urged in connection with the claim as to fairness and justice induces us to elaborate on the subject.

The Bank cites many cases in its briefs and refers us to many more appearing in the annotation in 26 ALR at page 1359 et seq. All of these cases except two have to do with one phase or another of the doctrine of relationship back as applied to a person who has become an executor de son tort of an estate and later has been appointed its lawful administrator. Of course, as claimed by the Bank, these cases impliedly recognize that one who has been an executor de son tort may later be appointed the lawful representative of the estate. The only cases cited by the Bank and the only ones we have found which directly touch the question of whether the fact that one has been an executor de son tort of an estate disqualifies him from appointment as its administrator are *Bingham* v. *Crenshaw*, 34 Ala 683, and *Carnochan* v. *Abrahams*, Charlton, 196. These cases are cited in the text books and other reference sources as holding, as they do, that the fact that one has been an executor de son tort does not per se disqualify him from being appointed the legal administrator of the estate. We have heretofore intimated in this opinion that we have no quarrel with these holdings.

In the present case however, as before stated, the mere fact that the Bank has acted as executor de son tort is not urged by the beneficiaries as a ground for disqualification but rather the claims which they say have accrued to the estate as a result thereof.

We have heretofore stated that the fact that one has intermeddled with the affairs of an estate presents no reason for such person's appointment as its administrator. There is much more reason for saying that relief from certain claims by virtue of the appointment presents no ground for the appointment. But we do not stop with this statement. As we have seen, the result of the appointment would be the extinguishment of the claim for depreciation in securities based on the executorship de son tort. The right to press this claim has legally accrued to the estate. The rule of law which gave rise to this claim may seem to be harsh or even unjust but it has so appeared to others in the same situation in which the Bank now finds itself. See *Clabburn* v. *Phillips*, 245 Mass 47, 139 NE 498, cited *supra* in the original opinion. In our view of the matter it would be unfair and unjust to the beneficiaries to deprive the estate of its right to pursue this claim. We also believe that in taking away this right by the appointment, and as a reason for making it, or otherwise, in face of the opposition of the beneficiaries, the court abused its discretion. It must be clear that a court in the proper exercise of its discretion cannot nullify a legal right.

Neither the Bingham nor the Carnochan cases, supra, conflict with what we have just said. In neither of these cases does it appear that any rights which had accrued to the estates would be nullified by the appointments; at least these claims, as far as it appears, were not made in opposition thereto. The latter case turned on the proposition that Carnochan had a creditor's right under the law of Georgia to the appointment which could not be withheld merely because he had made himself an executor de son tort of the estate.

When we wrote the original opinion it seemed to us that what we said on this subject of fairness and justice fully answered the Bank's claim in the matter. It followed, without the necessity of so stating, that if the Bank was a suitable person for the appointment it would be fair and just to appoint it. It equally followed that if it were not such a person its appointment would be unfair and unjust. We had in mind this matter of the extinguishment of the claim for

depreciation in securities when we wrote the original opinion. However, the position of the Bank as to the doctrine of relationship back as applied in its consequences to this case did not seem sufficiently clear or positive at that time to require the statements we have just made in respect to abuse of discretion resulting from the extinguishment. We stand on our holdings in the original opinion as reasons for the reversal. We treat the above referred to statements as replies to the claims of the Bank on this matter of fairness and justice. As a result of answering these claims of the Bank an additional reason is shown why the judgment below should be reversed.

Our concluding words on the merits of this case are these: The rule of disqualification because of adverse interests goes to the very essence of every relationship of trust. It guarantees integrity and impartiality on the part of the trustee and the rights of the beneficiary. It should not be made subject in its application to various exceptions or fine distinctions.

 The Bank suggests that as a result of the appeal the power to appoint a new administrator d.b.n., c.t.a. is now lodged by P. L. 2777 in the county court. In our opinion that statute does not apply to the situation in this case.

*No change or modification of the previous order is required as a result of reargument. Let full entry go down.*

MOULTON, C. J. (concurring). I concur in the result of the foregoing opinion, but I regret to say that I am not in accord with everything that is contained in it.

I take it as granted that the selection of a suitable person as administrator d.b.n., c.t.a. under the provisions of P. L. 2784 lies in the discretion of the probate court or, as here, of the county court sitting as a higher court of probate, and that such discretion will not be revised in the absence of a clear showing that it has been abused or withheld. And the test of an abuse is a showing that the discretion has been exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable. *Temple* v. *Atwood,* 99 Vt 434, 435, 134 A 591. Moreover, the term "suitable person" is to be construed as having reference to interest and business qualifications for the office of administrator and such relations to the estate and those interested therein as will be consistent with its proper and

safe administration. *State ex rel. Fourth National Bank* v. *Johnson,* 105 Wis 164, 169, 83 NW 320, 326.

As the opinion points out, an executor de son tort is not ineligible for appointment as administrator. If appointed, all acts previously done in relation to the estate, which would have been legal and proper, if he had been the legal administrator, are validated and he is required to account to the Probate Court as if he had always been in office. *Alford* v. *Marsh,* 12 Allen 603, 604; *Hatch* v. *Proctor,* 102 Mass 351, 354.

The existence of an adverse interest does not per se disqualify a person or corporation from appointment as administrator. Under certain circumstances a creditor of the estate may be appointed. P. L. 2775—II. And "there is nothing vicious in allowing an estate to be administered by one indebted to it." *Ford* v. *Peck,* 116 Kan 481, 227 P 527; *McFry* v. *Casey,* 211 Ala 649, 101 S 449, 450. The opinion recognizes this principle but holds that since there are large claims asserted in good faith against the appellee for negligence and for sums of money taken from the estate as executor's fees, while acting as executor de son tort, the adverse interest is of such a nature that the appellee, if appointed, could not fairly and impartially administer the estate, and that if the appellant's requested findings had been made it would have been an abuse of discretion to select the appellee as a suitable person to act as administrator. Now, I agree that these findings were based upon the uncontradicted evidence and were material, and that it was error to refuse them. There is no doubt that they have great weight and should be considered by the trial court in the process of exercising its discretion. But I do not agree to the proposition that they necessarily result in a disqualification. I do not believe that it can be said, as a matter of law, that they create an adverse interest so great as to overpower the appellee's adherence to its legal and moral duty, if appointed, and I think that in this respect the result of the opinion is to substitute the discretion of this Court for the discretion of the court making the appointment. We have no discretion in the matter. *Bradley* v. *Blandin,* 94 Vt 243, 257, 110 A 309. It may be that if this Court had been charged with the duty of making the appointment in the first instance, a different result would have been reached, but difference in judicial opinion is not synonymous with abuse of judicial discretion. *Dyer* v. *Lalor,* 94 Vt 103, 116, 109 A 30. These claims are capable of adjustment in the orderly course of

procedure in the probate court. See *In re Hall's Estate,* 70 Vt 458, 462, 41 A 508. If the decision rested upon this point alone, I would reverse and remand the cause so that the trial court could exercise its discretion upon the record as enlarged by the inclusion of the requested findings.

I am, however, in accord with my associates in what is said concerning the claim against the appellee based upon its liability as executor de son tort. Whether this liability was assumed at the time of the consolidation of the City Trust Company and the Howard National Bank, or at the time of the expiration of the City Trust Company's charter is not necessary to decide. Since, as has been said, the appointment of an executor de son tort as administrator relates back it follows that the taking possession of the estate would be validated, and the claim for conversion of the assets would no longer exist. The liability of an executor de son tort is enforceable in an appropriate proceeding either at law, or in equity, brought against the intermeddler by the legally appointed administrator, and not before the probate court. *Shaw* v. *Hallihan,* 46 Vt 389, 394, 14 Am Rep 628. Therefore I agree that it is an abuse of discretion to appoint a person administrator when a legal claim asserted in good faith against him, which is a potential asset of the estate, would be thereby extinguished and lost.

On argument counsel for the appellee called attention to certain evidence in the case, to the effect that over a period of years, while the appellee was executor de son tort, the appellants raised no objection to the handling of the estate by it, corresponded with it and treated it as the legal executor, consented to a partial decree of distribution and received from it the sums of money so decreed, without questioning its authority. It was suggested that this evidence should be embodied in findings, to be used as a guide to the court's discretion, if the appellant's requests should be granted.

It has been held that when an executor de son tort has acted with reference to an estate with the consent of the interested parties, it is inequitable for them to insist upon the liability which legally accompanies the intermeddling. *Blair* v. *Brooks,* 234 Ala 129, 173 S 851, 853; *Davenport* v. *Sanderson,* 204 Iowa 927, 216 NW 55, 56-8; *McHugo* v. *Norton,* 159 Minn 90, 198 NW 141, 142; *In re Johnson,* 68 SD 598, 5 NW2d 38, 41. But if applicable to the facts of the present case, which it is not necessary to decide, this principle is a matter to be put forward in defense of an action

brought against the intermeddler on behalf of the estate, or as a ground for equitable relief. It is not a question for the probate court to determine in making the appointment.